Bell, J.
The plaintiff in error herein, father Culkin, a Catholic priest, while in charge of the Canon City parish and church property in the year 1888, was suspended and had his faculties as a priest taken from him by bishop Machebeuf; nevertheless, he, said priest, did not deliver possession of the church property to said bishop on demand, and suit therefor was instituted in the Fremont County District Court at Canon City,' Colorado. In February, 1890,-bishop •Matz, successor to bishop Machebeuf, and Henry Egler, a Catholic priest, plaintiffs in said suit, signed a stipulation, stating that the controversy over the church property had been amicably adjusted, and the cause dismissed at their costs, and that, in consideration thereof, father Culkin agreed to deliver to. the bishop the church property held by him and' release the sureties on the bond filed in the action. This stipulation was taken by father Egler to father Culkin at Canon City for his approval and signature, and father Culkin added qualifying provisions to the same, preceding his signature, as follows:
“This stipulation is subject to the terms of an agreement made this day between the parties and signed on the part of bishop Matz by T. H. Malone, February 14, 1890.”
The agreement referred to in the clause above quoted is signed as stated therein, and is to the effect that, as a part of the settlement of the suit between the parties, and partly in consideration thereof, father Culkin would accept and receive the position of priest of the Sterling parish, and should be guaranteed a salary of $600 per year, and the *200 perquisites usually going with such a position; that he would be allowed to present his accounts for payments of money claimed to have been personally made by him in and about said church property, and be compensated therefor in the manner usual in cases of moneys so advanced by parish priests; that he should have the right to have his claim for past salary adjudicated by the church authorities; and that he should be allowed $150 for counsel fees in said suit. On this agreement, and the modified stipulation, father Culkin instituted the present action in the District Court of the City and County of Denver in April, 1909, more than 19 years after their execution, to recover from the bishop th® sum of $17,000, with interest thereon at the rate of 8 per cent, per annum from-the 5th day of March, 1907, as a balance claimed to be due him thereunder, and the case was tried to a jury and resulted in a directed verdict in favor of the defendant and judgment against the plaintiff for costs.
The agreement and modified stipulation were never filed in the Fremont County District Court or acted upon by the parties, and it seems that they were not seen by the bishop until some days after their execution. He contends herein that father Malone was authorized only to tender to father Culkin the Sterling Parish; that all other propositions contained in the agreement were made subject to his approval; that the papers were forwarded to him in Denver for this purpose; and that he never ratified them or any part of them. Father Culkin testified at the trial of the instant case that, soon after he signed the instruments, he called upon .the bishop at Denver, and that the bishop said to him:
“This is the contract that I authorized father Mialone to make; I will pay you that contract, on condition that you give me an account of the money you received questing.”
•To this he testified he replied that he, the bishop, was defeated in Rome and in the civil courts; that what he, the *201 bishop, demanded was not in the contract; and that the moneys given him by his friends for his persona] use the bishop was not entitled to. He informed the bishop that he had no means whatever to pay his expenses to Sterling, and insisted that the bishop should advance or lend him money enough to make the trip. The bishop declined to do this.
The bishop held the stipulation which authorized him to dismiss the action in the Fremont County District Court at his own cost, and re-possess the church with its property ; but he ignored the same and proceeded with the trial in the usual way. The record shows that father Culkin also appeared at the trial- and defended in the usual way, and that a judgment and a decree were therein rendered against him, imposing upon him the costs and perpetually enjoining him from in any manner interfering or meddling with the posesssion of the church property. If he desired to use the stipulation and agreement in the civil courts, he had the legal right to set them up in a supplemental answer, and' show that, by an existing legal contract, he was exonerated from being mulcted with any of the costs of the proceedings. He says, however, that he appeared only to see that nothing was done to militate against his rights under the stipulation and agreement. .This may be true. .The court records, however, show that he participated in the trial and therein ignored his stipulations, and that he excepted to the entering of the decree and was granted 90 days within which to tender a bill of exceptions.
Soon after the completion of the trial in the Fremont County District Court, he took the modified stipulation and agreemént to Rome and presented them to the ecclesiastical authorities there, and' remained there for a period of 14 years in an endeavor to have his claim allowed by the- ecclesiastical court, which finally rendered a decision in word» and figures as follows: - ‘ -
“S. Congregation De Propaganda Fide.
*202 Rome, May 15th, 1895,
“Protocol No. 12923.
“Most Illustrious and Reverend Lord:
“I inform your Lordship that in the General Meeting held on the 22nd day of last April the Most Eminent Fathers considered the question between the Denver Curia and the priest Culkin, and gave the following decisions, which were confirmed by His Holiness in an audience on the 11th day of the present month of May, namely:
“(a) That the legality of the contract between the priest Culkin and the Rev. Malone has not been proven, nor is it to be enforced (or put into execution).
“ (b) That there is no ground for the damages which the priest Culkin asks of the Bishop of Denver.
“(c) That the aforesaid priest Culkin has no right to be reinstated in the parish of-Canon City.
“(d) The Bishop of Denver is requested to pay the priest Culkin an annuity of $200.00, which he himself offered; on these conditions, however, that the said priest first submit to the bishop and seek another diocese far removed from the Diocese of Denver. In the meantime, let him know that he has relapsed under the censures from which he has been absolved during the trial. By these decisions the questions must be considered as finally determined, and the Most Eminent Fathers appended the clause 'ne amplius,’ which means that ‘the cause will not be heard again.’
“M. Card. Ledochowski, Prefect.”
In 1900, father Culkin wrote the bishop an apology, to-wit: “If during this controversy I have offended you, I am sorry.” The bishop construed this as a submission under the decision of the ecclesiastical court, and on September 19th, 1900, he wrote father Culkin, among many other things, as follows:
“Now, then, since you profess full submission to the Holy See, I herewith relieve you from all censures, so you *203 may be allowed to say mass. Bear in mind, however, that should you ever return to Denver, or any part of this diocese, you will ipso facto fall again under censure and be deprived of your annuity.
“ * * * I will say that as soon as you will inform me where you have settled down to stay, I- will send you one hundred dollars, one-half of your annuity in advance for six months; and thereafter regularly every six months the same amount.”
For the subsequent 7 years, these remittances as promised in the bishop’s letter were forwarded to father Culkin and retained by him, who at times sent receipts to the effect that he accepted the payments on the agreement herein sued upon; and by reason of .such receipts, he now contends, for the purpose o.f avoiding the statute of limitations, that these payments must be construed as having been made upon the agreement.
The circumstances attending these payments, in addition to the statements contained in the bishop’s letter, make it unmistakable that every payment was intended to be made on the annuity as suggested by the ecclesiastical court, and it is immaterial as to what father Culkin may afterward have said in letter, or receipt, or by word of mouth, if he retained the payments that the bishop applied and intended to be applied upon the annuity. The general rule is that a debtor paying money to his creditor has the right to direct how the money shall be applied; that is if he be indebted on separate and distinct accounts, he may have the money applied on such account or accounts as he shall direct, and the creditor receiving the money with süch directcions is bound to give credit accordingly. If the debtor pays money to his creditor without directions as to its application, the creditor may apply the same to any debt due him at the time from such debtor. It is not, however, always necessary that the debtor should expressly state his purpose as to the application of the payment; if from the circumstances of *204 the case, his purpose may be clearly implied, the creditor is bound to regard it. .Thus where the creditor owes him on two separate demands, one of which is admitted and the other disputed, if the debtor under such circumstances makes a payment to his creditor, it will be presumed, in the absence of evidence to the contrary, that the payment is made upon the demand admitted rather than upon the one in dispute at the time of making such payment: Perot v. Cooper, 17 Colo. 80, 86, 28 Pac. 391, 31 Am. St. 258, and cases cited.
Decided February 8th, A. D. 1915.
Rehearing denied June 15th, A. D. 1915.
We think that the claim of the plaintiff in error clearly comes within the statute of limitations, and is, therefore, barred, and that defendant’s motion for a directed verdict at the close of the evidence was properly granted. It is immaterial whether the cause assigned by the trial court for directing the verdict is sufficient in itself, as the result was the proper one, and the judgment is, therefore, affirmed.

Affirmed.