# No. 16,096.

## Mumm et al. *v.* Taylor et al.
### (213 P. [2d] 836)

Decided January 9, 1950.

Mr. HARRY E. MAST, for plaintiffs in error.

Mr. ROBERT R. SABIN, Mr. CHAS. E. SABIN, Mr. JOHN R. FULLINGIM, for defendants in error.

*In Department.*

MR. JUSTICE HAYS delivered the opinion of the court.

DEFENDANTS in error recovered judgment in the district court against plaintiffs in error upon a draft in the sum of $2279.50, under circumstances hereinafter stated. Reversal is sought by writ of error.

Jay Taylor and Edward B. Johnson, plaintiffs below, were the operators of a livestock auction sales ring in Amarillo, Texas, and Claus Mumm and Henry Adam, defendants, operated a similar sales ring at La Junta, Colorado, under the name of La Junta Auction Company. Plaintiffs alleged in their complaint that defendants, prior to June 17, 1946, entered into an agreement with one L. L. McDaniel to the effect that defendants would honor drafts upon them drawn by said McDaniel; that on June 17, 1946, McDaniel purchased from plaintiffs, forty-nine head of cattle and in payment thereof drew a draft upon defendants in the amount of $2279.50, payable to plaintiffs; that said draft was drawn in accordance with the above-mentioned agreement between defendants and McDaniel; that thereafter McDaniel paid to defendants the full amount of said draft; that defendants dishonored the draft and refused at all times to pay same; that prior to the delivery of said cattle, plaintiffs communicated by telephone with defendant Mumm, and were told by him that said draft would be honored; that immediately following the telephone conversation with Mumm, and in reliance thereon, plaintiffs accepted said draft and delivered the cattle to McDaniel; that by reason of the foregoing, defendants are indebted to plaintiffs in the sum of $2279.50 with interest.

Defendants, in their answer, alleged that McDaniel was authorized to execute and deliver drafts upon defendants only by agreement in advance in each instance, and then, only upon condition that the livestock purchased would be shipped to them at La Junta for sale in their auction ring; they admitted their failure and refusal to honor the draft, and denied all liability thereon. They also admitted that McDaniel had paid them an amount in excess of $2279.50 subsequent to June 17, 1946 [June 23, 1946], and that said sum was credited to the account of L. L. McDaniel, leaving a substantial balance owing from McDaniel to defendants.

In support of plaintiffs' complaint, evidence was introduced to the effect that McDaniel purchased the forty-nine head of cattle at plaintiffs' sales ring in Amarillo, Texas, June 17, 1946, in accordance with an agreement between defendants and McDaniel, and thereupon drew the draft involved herein in payment therefor; that he exhibited to plaintiffs a book of blank drafts furnished by La Junta Auction Company with the name of said company printed thereon, indicating that McDaniel had purchased a large number of cattle in various places throughout the country and paid for same with similar drafts drawn upon defendants; that plaintiffs put in a long distance telephone call to one Henry Lawson at Lubbock, Texas, and another to the La Junta Auction Company prior to the acceptance of said draft and the delivery of said cattle to McDaniel, for the purpose of determining whether or not McDaniel was the agent of, and had authority to draw drafts upon, defendants in connection with the purchase of cattle; that plaintiffs were informed by Lawson that McDaniel had drawn several drafts on the defendants' company and all of same had been paid; that prior to the delivery of the cattle, June 17, 1946, and the acceptance of said draft, plaintiff Taylor had a conversation over the phone with Mr. Mumm at La Junta, which in part, as related by Taylor, was as follows:

"Q. State as near as you can recall what you said to that individual [Mumm] and what that individual said to you.

"A. I said, 'Mr. McDaniel has bought—' I believe it was 49 head of cattle—'here today, and has drawn a draft on the La Junta Auction Company, and says that you are the man that owns it, and I am verifying the fact that he is your agent by this telephone call and will pay this draft.' And he said 'Yes, he is buying cattle for us. We will pay the draft.'"

That immediately following said telephone conversations with Mumm and Lawson, and in reliance thereon, plaintiff delivered the cattle to McDaniel; that the cattle were loaded in a truck and taken by McDaniel to Munday, Texas, for sale in another auction ring, as he was authorized to do by said agreement; that the cattle were sold in the Munday ring the following day for $1,869.17, which amount was "wired" to McDaniel at Lubbock, Texas; that McDaniel, with the proceeds from the said sale, and with other money received from the sale of other cattle for defendants, purchased a cashier's check in the sum of $3,000; that McDaniel took the check, dated June 22, 1946, drawn on the First National Bank of Lubbock, Texas, and delivered it personally to defendant Claus Mumm, at La Junta on June 23, 1946; that at the time said cashier's check was delivered, McDaniel instructed Mumm to use the proceeds thereof to take up plaintiffs' draft, payment of which had theretofore been refused by defendants; that Mumm, instead of applying the cashier's check to the payment of the draft, as directed, credited McDaniel's account therewith.

Defendants moved for dismissal of the action and for a directed verdict, upon the ground that said draft was not accepted in writing and signed by the drawee thereof as required by section 132, chapter 112, '35 C.S.A., which provides: "The acceptance of a bill is the signification by the drawee of his assent to the order of the

drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

Plaintiffs admitted that said draft was not accepted and signed as provided by the statute, but alleged that the circumstances above related constitute an implied or constructive acceptance thereof, and that defendants are estopped thereby from denying the authority of McDaniel to draw upon them or deny that the acceptance was in writing and signed by the drawee therein named.

The trial court denied defendants' motion for a directed verdict, and submitted the case to the jury, but failed to give any instructions upon implied or constructive acceptance of the draft or upon the question of estoppel, in accordance with plaintiffs' theory of the case, and limited the jury in its consideration to one issue, as shown by the following: "You are further instructed that the sole question for you to determine in this case is whether or not a certain cashier's check delivered by L. L. McDaniel to the defendants was so delivered by the said McDaniel with instructions to pay the draft of $2279.50 from the proceeds thereof. If you believe from the preponderance of the evidence that the defendants in this case were instructed by the said McDaniel to pay this draft from the proceeds of said cashier's check, your verdict should be for the plaintiffs in the sum of $2279.50, and unless you believe such cashier's check was delivered with such instructions, your verdict should be for the defendants."

Defendants objected to the giving of the above instruction, "because of the fact that the instruction refers to a matter which is not covered by the pleadings in the case and it isn't a correct statement of the law governing the theory of a recovery for money had and received."

We cannot agree with defendants' counsel that the

above instruction relates to a matter not embraced within the pleadings. It is alleged in the complaint that McDaniel paid defendants the full amount of the draft. Defendants, in their answer, admitted receiving such payment, and alleged in connection therewith, that the same was credited to the account of McDaniel. During the trial both sides introduced evidence as to what directions were given by McDaniel to Mumm at the time payment was made. McDaniel testified that he told Mumm the $3,000 cashier's check was for the express purpose of taking up the draft which theretofore had been dishonored by defendants. Mumm testified in response to questions propounded by his attorney: "Q. What did he say to you when he gave you this draft or check? A. He told me to credit his account with it. Q. Did he say anything at that time about the check being used to pay this draft that had been given to Mr. Taylor? A. He certainly did not. Q. Was it mentioned in your conversation? A. It was never even mentioned."

From the foregoing it clearly appears that both plaintiffs and defendants considered the instructions which McDaniel gave to Mumm, at the time of the delivery of the cashier's check, of utmost importance and within the issues to be considered by the jury.

In reference to the last portion of defendant's objections to the instruction above set forth, to the effect that said instruction is an incorrect statement of law for the recovery of money had and received, plaintiffs in error say in their brief: "The instruction is further objectionable because it does not correctly state the law on the proposition. As it was worded, all that the jury had to find from the evidence was that McDaniel had paid the amount represented by the cashier's check to the defendants, and that at the time of such payment he had given the defendants instructions to pay the draft out of the proceeds of said check. It should have gone further, and stated that the jury must find from the evidence that the defendants had also consented to

receive the cashier's check upon the condition which was imposed by McDaniel."

No authority is cited, and we have been unable to find any, which supports said statement. Obviously the theory upon which the trial court relied in giving the instruction is that the person making payment has the right to direct its application. *Kingsbury & Co. v. Riverton-Wyoming Refining Co.*, 68 Colo. 581, 192 Pac. 503; *Boyd v. Agricultural Insurance Co.*, 20 Colo. App. 28, 76 Pac. 986; *Mackey v. Fullerton*, 7 Colo. 556, 4 Pac. 1198; *McBride v. Noble*, 40 Colo. 372, 90 Pac. 1037.

 The rule followed by the court in announcing the above decisions is well stated in section 110, page 792, American Jurisprudence, as follows: "It is a well-settled principle of both the civil and the common law, which is universally applied, that a debtor owing more than one debt to a creditor or a debt composed of several items has the right to direct to which debt or debts or to which item of a single debt and in what amounts a payment made by him shall be applied. The reason for this rule is that up to the time of payment the money is the property of the debtor, and being such may be applied as he sees fit. If a debtor directs the application of a payment, the duty is thereby imposed on the creditor, regardless of whether he does or does not agree or consent to the debtor's request, to apply the money as directed, or return it to the debtor, and if he fails to return it, it is regarded by law as having been applied as directed, no matter how the creditor in fact applied it, unless the improper application is subsequently ratified by the debtor. Thus it has been held that where, pending the adjustment of a disputed liability, the debtor sends his creditor money as a payment in full of the demand, it is the duty of the creditor to accept the money for the purpose for which it was offered, or to return it, and his refusal to return it will be deemed an election to accept it for the purpose offered."

██ Apparently, the theory of defendants has at all

times been that plaintiffs, as a matter of law, cannot recover, because the acceptance of the draft was not in writing and signed by the drawee in accordance with the statute. No instructions were tendered on behalf of defendants as a substitute for the one to which objection was made, and they relied entirely upon their motion for a directed verdict in their favor. Under such circumstances the fact that the trial court failed to instruct the jury upon plaintiff's theory of implied or constructive acceptance and estoppel, and in unduly limiting the issues to the one mentioned in the above instruction, does not seem to be a matter of which defendants may justly complain. The effect of the given instruction was to prevent plaintiffs' recovery upon any theory unless they could establish to the satisfaction of the jury that McDaniel had directed that the payment made was to be applied upon the draft.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE ALTER concur.