No. 18,049.

CHARLES RICHIE, ET AL. *v.* C. A. PHILLEBAUM, ET AL.
(324 P. [2d] 375)

Decided April 21, 1958.

Messrs. McDOUGAL & ROGERS, Mr. FRANCIS W. BROWN, for plaintiffs in error.

Mr. WARREN KENT ROBINSON, Mr. JACK D. HENDERSON, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

WE will refer to the parties herein as they appeared in the trial court where plaintiffs in error were defendants and defendants in error were plaintiffs, or by name.

In October 1953, plaintiffs sold a small ranch of approximately twenty-two acres in Adams County, Colorado, to defendants, in connection with which defendants executed and delivered their promissory note in the sum of $13,671.35, which note was secured by a deed of trust to the Public Trustee of Adams County on the real estate conveyed by the Phillebaums, together with a chattel mortgage on certain cattle also sold by plaintiffs to defendants. The note was payable in monthly installments of $150 each commencing November 26, 1953, and continuing for a period of five years, at the end of which time the balance remaining was due and payable. Defendants made monthly payments on this indebtedness in December 1953, and from February 22, 1954, to and including October 8, 1954.

On January 19, 1954, plaintiffs and defendants gave an option to the Colorado State Highway Commission to buy and remove sand and gravel from the premises. On August 3, 1954, the parties to this action entered into a written agreement which in substance provided that out of the proceeds to be received from the sale of sand and gravel on the tract above mentioned "on which C. A. Phillebaum and Mary E. Phillebaum hold deed of trust on which remains due the approximate sum of $13,000.00, that Phillebaums are to receive $5,000.00 and the remaining balance is to be paid to Richie. It is understood that out of the sum received by Richie that

the taxes are to be paid by Richie. Richie further agrees to refinance the balance due after the above is paid, within 90 days from the date of payments for the gravel." On January 12, 1955, the Colorado State Highway Commission paid the sum of approximately $7,250.00 for the sand and gravel removed from the premises, of which sum plaintiffs received $5,000 and defendants the balance. Defendants paid $325 on April 8, 1954, and an additional $1,000.00 resulting from the sale of cattle by defendants, the cattle being covered by the chattel mortgage given as additional security for their note.

By their action plaintiffs sought to foreclose the deed of trust alleging that a balance of $7,709.77 together with interest and counsel fees, as provided in the deed of trust, was due and unpaid. Defendants by their answer contended that the payment of $5,000 to plaintiffs, on account of the sand and gravel removed from the premises, accelerated the monthly payments and that at the time the action was commenced, July 15, 1955, they were not in default on the note, but had in fact paid the installments in advance. The trial court found there was due plaintiffs $7,018.25 together with interest; $500.00 attorney fee as provided in the deed of trust, together with costs of the action, and directed the sale of the property to satisfy the judgment entered on the findings. From the judgment and decree so entered the defendants bring the case here on writ of error.

The record discloses the following testimony given by Charles Richie:

"Q. Mr. Richie, at the time the settlement was made with the State Highway Department, did you enter into a written agreement with Mr. Phillebaum that you would pay the remaining balance within 90 days from date? A. Yes. Q. You haven't paid this remaining balance off yet, have you Mr. Richie? A. No, I haven't paid it off."

The testimony of Mr. Phillebaum was as follows:

"Q. Mr. Phillebaum, will you tell the Court briefly in your own words what your understanding was with Mr. Richie and how it came about that you did receive the $5,000 payment? A. Well, it was through sale of the gravel; and he at that time agreed if I would give him part of the money out of the sale of that gravel that he would refinance within 90 days. Q. And pay you the remaining balance? A. And pay me the remaining balance of the note. * * * Q. Mr. Phillebaum, did you object to this agreement in the beginning? A. Yes, sir, I did. Q. For what reason? A. Well, it made the place practically worthless for farming, and which would ruin the irrigation system, and everything. * * * Q. Was it [the gravel] dug out of pits? A. Yes, sir."

The sole question to be determined on this review relates to the validity of the subsequent agreement concerning the proceeds of the sale of sand and gravel from the mortgaged premises. It is contended that the agreement was without consideration, and that the Richies were entitled to direct how the money paid plaintiffs was to be applied, hence there was no default in payments under the note.

It is undisputed that the State Highway Department would not enter into a contract for the purchase of sand and gravel from this land without the consent of both the Richies and the Phillebaums. When the time for payment arrived discussions occurred with reference to the distribution of the money. Mr. Richie testified that the State Highway Department told him the Phillebaums were "entitled to the whole gravel." It was then that the parties entered into the written agreement referred to above. Nothing is specified therein as to how the $5,000.00 payment to plaintiffs was to be applied, nor does it appear that the matter was ever discussed by the parties. In the absence of an agreement or of specific directions by the debtor, there being but one debt, sums so paid may be applied by the creditor to reduce the principal.

■ Considering the effect of the removal of the sand and gravel on the value of this twenty-two-acre tract of land as disclosed by the uncontroverted evidence in the case, it is patent that there was a very definite reduction in the value of plaintiffs' security. It was first necessary for defendants to obtain plaintiffs' consent to remove the sand and gravel from the land. In return they agreed to a specific distribution of the revenue to be received, and agreed to refinance the balance due on their note within ninety days after the money was paid. These mutual promises embodied in the agreement of August 3, 1954, constitute consideration for the contract.

■ Plaintiffs' security was diminished by the removal of the sand and gravel. There being no agreement or direction by defendants as to the application of the $5,000 payment plaintiffs had the right to apply it to the principal of the note, and it having been distinctly agreed that the defendants would refinance the balance within ninety days after the payment for the sand and gravel, or as Mr. Richie put it he "would pay the remaining balance within ninety days," we must hold that defendants were in default after the expiration of the ninety-day period. The judgment of the trial court must be and it is affirmed.

Mr. Justice Frantz dissents.

Mr. Justice Frantz dissenting:

The original agreement between the parties was novated when the parties entered into the subsequent agreement. *Clapp v. Hawley,* 69 N.Y. 625. Under the later agreement, the Richies agreed within 90 days after receipt of payment for the gravel to re-finance the obligation created by the first agreement. It is the failure to re-finance that constitutes the breach upon which the present suit is based. I entertain serious doubts that a suit for foreclosure of the original agreement has proper predicate in these circumstances.