No. 20589.

RICHARD STEWARD JACKSON, ET AL., *v.* A.B.Z. LUMBER CO.
(392 P.2d 288)

Decided May 18, 1964.

Mr. JAMES T. AYERS, Mr. FRED R. REHMER, for plaintiffs in error.

Mr. STANLEY W. PRISNER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties by name.

A.B.Z. Lumber Company was successful in the trial court in its suit to foreclose a "materialman's" lien on

the property of Richard and Maria Jackson. Alumilux-Scott, Inc., was the general contractor employed to remodel the Jackson home at 4430 South Sherman St. Donald Duffy, doing business as Tritan Construction Company, was one of the subcontractors to perform a portion of the contract. Duffy purchased from A.B.Z. Lumber material in the amount of $681.13 which was used on the Jackson job. The material was obtained on credit and charged to Tritan Construction Company account which as of May 24, 1960, was considerably delinquent and which showed an outstanding arrearage of $2415.75. Duffy obtained the material from the lumber company between the dates of May 24 to June 16, and his balance increased to $3163.50, all but $86.62 being attributable to material obtained for the Jackson premises.

On June 17 Duffy was paid for the material furnished on the Jackson subcontract. He was given a separate check therefor by Alumilux-Scott with an endorsement on the back thereof "In payment of material on 4430 South Sherman St." He was given another check in the amount of $1255.45 for work and labor performed for a total of $2013.45 for the completed job. He deposited both of these checks in a Tritan Construction Company checking account on June 20, 1960, and on the same day he personally went to A.B.Z. Lumber and there gave them a Tritan Construction Company check in the amount of $2300.00. He testified at the trial that he instructed the bookkeeper to credit from this amount that portion which was owed by reason of the purchase of materials for the Jackson premises and to apply the balance to his general account. The bookkeeper denied that she was given any such instruction. She testified that she entered the payment on the ledger as merely "on account." This left a balance in an amount almost identical with the sum of the purchases made for the Jackson job. By thus crediting the account, the delinquent balance was wiped out, leaving owing the newly

created indebtedness for the material used on the Jackson remodeling. Duffy failed to take care of this balance, and in September A.B.Z. Lumber filed its lien statement of record encumbering the Jackson home. On October 28 suit was filed in the district court to foreclose the lien.

It was undisputed that the Jacksons had paid Duffy in full for his performance of the subcontract, including payment for the material, and that this was the money used by Duffy to pay the $2300.00 to the lumber company. But it was contended by A.B.Z. Lumber in the trial court that in the absence of specific instructions to apply a portion of the payment to the material used for the Jackson job, the lumber company had the right to apply the payment to the general account. The trial court in its conclusions of law agreed with the contention of A.B.Z. Lumber after making a finding of fact that Duffy had not given any instructions as to how the payment was to be applied.

It is contended in this court that there was a direct conflict in the evidence on the question of whether Duffy gave instructions for application of the funds and that the trial court having resolved the issue in favor of the company and having chosen to believe the bookkeeper, the finding by the trier of the facts is binding on this court on review.

We are not in agreement that the judgment is on a disputed question of fact. On the contrary, it presents equity considerations which the trial court failed to apply.

The general rule is that announced by the trial court. We find the rule to be stated thusly: that a debtor owing more than one debt to a creditor has the right to direct to which debt the payment shall be applied. 40 Am. Jur. (Payment) 110; Restatement on Contracts, § 387; *Mumm v. Taylor*, 121 Colo. 157, 213 P. 2d 836. In the absence of direction or expression by the debtor of his intent as to how payment should be

applied, the presumption is that he thereby assents to such application of the funds as the creditor may desire to make. The creditor is allowed to make the appropriation in a way most advantageous for himself. *Perot v. Cooper,* 17 Colo. 80, 28 Pac. 391; *Culkin v. Matz,* 27 Colo. App. 198, 149 Pac. 270; *Richie v. Phillebaum,* 137 Colo. 295, 324 P.2d 375; 70 C.J.S. (Payment) § 57.

However, there are some well recognized exceptions to this rule which the facts of this case bring into play. In failing to recognize and give force and effect to the exceptions the trial court committed error.

 The application of payment by a subcontractor to a materialman affects not alone the parties to the transaction, thus the general rules cited above do not apply where the evidence shows that the interest of third parties is known or should have been known by the creditor. Specifically, the materialman will not be allowed to apply the payment received from the subcontractor to any other debt than that which its source renders appropriate, if when the payment is made the materialman has notice of the source. Restatement on Contracts, § 389; *Williams v. Willingham-Tift Lumber Co.,* 5 Ga. App. 533, 63 S.E. 584; *Hughes v. Flint,* 61 Wash. 460, 112 Pac. 633. If this were not the rule, then the materialman could apply the payment (as was actually done in this case) to the unsecured debt and then obtain a preferred lien against the property from whose owner the money came.

 The right to a materialman's lien, although given by statute, is based upon considerations of natural justice. It is predicated on the equitable considerations that one who has enhanced the value of property by attaching thereto or having incorporated· therein his material shall have a lien therefor. *Bishop v. Moore,* 137 Colo. 263, 323 P.2d 897.

 The action to foreclose such lien is addressed to the equity side of the court and therefore considerations of justice and equity will compel the materialman to

credit a contractor's account so as to protect the owner from whom the funds are procured if the source thereof be known by the materialman. He may not use the money of one to pay the debt of another when, on the other hand, the one who has paid his material bill will be compelled to pay the debt twice in order to release his property from the lien. *Sioux City Foundry & Mfg. Co. v. Merten,* 174 Ia. 332, 156 N.W. 367.

That A.B.Z. Lumber knew from whence Duffy obtained the money to pay his account is revealed by these facts: The credit manager of A.B.Z. Lumber was making a personal concentrated effort to collect the "considerable balance" which Duffy owed. Numerous phone calls were made to no avail, and finally on one call A.B.Z. Lumber was informed that Duffy's phone had been disconnected. Therefore, the credit manager made a personal call at the home of Duffy to collect the money. The credit manager said that he and Duffy discussed the Tritan balance "on many occasions." The credit manager knew from these conversations that Duffy did not have the money to pay, and he was told that he would have to wait until Duffy got the money from the jobs that were being started and after their completion. A.B.Z. Lumber knew from the purchase orders and the address to which they were delivered what jobs Duffy was talking about. These were the Jackson job and one at 200 South Ogden. Duffy said he identified to the credit manager the jobs from which the proceeds were coming and that as soon as he got the money he would be able to pay the bill. The credit manager didn't sue Duffy or stop his credit, but extended Duffy further credit which enabled him to perform the Jackson contract. Although it was not testified to directly, it may be inferred from the actions of A.B.Z. Lumber thereafter that one of the reasons they extended him additional credit to obtain the material for the Jackson job, in spite of his serious delinquency, was to enable him to

get the job and get "new" money. This was their best chance for payment.

It would be a very serious miscarriage of justice, in the light of these circumstances, to permit A.B.Z. Lumber, which had lost its lien rights on the delinquent account created by Duffy, to give him the material to enable him to get additional contracting jobs, take the money for those jobs for the payment of a delinquent balance, and then use the mechanics' lien statute on the newly acquired construction job to enforce the balance of the payment. Such an arrangement, if done by collusion between a materialman and a contractor, would amount to fraud. It is no less unjust because a materialman claims he was not given instructions as to how he should apply the funds when he well knew, or should have known, from whence the funds came.

The judgment is reversed and the cause remanded to the trial court with instructions to dismiss the action.

MR. JUSTICE MOORE and MR. JUSTICE PRINGLE concur.