In re BALDUCCI OIL COMPANY, INC., Debtor.

Richard T. ECKLES, Trustee, Plaintiff,

v.

PAN AMERICAN MARKETING, Defendant.

Bankruptcy No. 82 B 1319 C.
Adv. No. 83 G 0508.

United States Bankruptcy Court, D. Colorado.

Aug. 29, 1983.

Mark Fulford, Denver, Colo., for trustee.

Bryan Crookston, Salt Lake City, Utah, for defendant.

## MEMORANDUM OPINION

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER comes before the Court pursuant to a Complaint to Recover Preferential Transfer filed by the Trustee. On February 17, 1982, the debtor made a transfer to the creditor, Pan American Marketing, Inc. of a check numbered 2962 in the amount of $12,575.50 dated February 17, 1982. This is reflected in plaintiff's Exhibit 1. The Trustee argues that the transfer is a preference, voidable under § 547(b) and should be returned and preserved for the benefit of the bankruptcy estate. The creditor contends that the transfer was not preferential because all five elements of § 547(b) have not been shown. Alternatively, Pan American Marketing believes that the transfer qualifies as an exception to preferential treatment under § 547(c).

### FINDINGS OF FACT

Pan American Marketing, Inc. is a surname for the corporation Pan American Helicopter, Inc., which, in turn, is a subsidiary of Rocky Mountain Helicopters, Inc. Both corporations have been incorporated in Utah. The creditor was in the business of aviation supplies and service. The debtor, at least in this context, was a broker, or middleman, for the sale of helicopter fuel. Between approximately June, 1981 and January 15, 1982, Balducci Oil bought helicopter fuel on an "open account" from Pan American Marketing, Inc. Pan American would deliver the fuel to third-party customers and later receive payment directly from Balducci Oil.

The uncontroverted testimony of the Trustee generally established the business practice of Balducci Oil, as follows: When making payments on open account to Pan American, Balducci Oil would forward a check (i.e. Exhibit 1) and a check statement (copy is part of Exhibit 2). The check Statement listed the invoices against which the proceeds of the particular check were to be applied. Although the original check statement cannot be produced, the evidence that the original was forwarded consists of the business practice of Balducci, the absence of an original check statement which corresponds to the check (Exhibit 1) and Exhibit 2, a copy of the check statement.

In light of the above evidence and the absence of contrary testimony, I find that the original check statement, a copy of which forms part of Exhibit 2, was sent to Pan American by Balducci Oil. The copy (Exhibit 2) indicates that the check was to be applied to invoice No. 387, dated November 6, 1981, for product in the amount of $3,628.00 and invoice No. 395, dated November 10, 1981, for product totalling $8,947.50.

In fact, the testimony of Brian Burr, an officer of Pan American Marketing, Inc., concerning the financial arrangements between the parties supports this result. He stated that the parties had an "open account" under which Balducci purchased fuel for delivery to third parties. Mr. Burr admitted that Pan American continued to sell fuel as long as payments were forthcoming. Mr. Burr candidly stated that his company applied funds from Balducci Oil's checks to the oldest invoices on hand as Balducci paid "on past due accounts."

## CONCLUSIONS OF LAW AND ORDER

■ The preference provision of 11 U.S.C. § 547 is intended to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy" and to facilitate equality of distribution. HR Rep. No. 95–595, 95th Congress, 1st session at 177–178 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6138, In re Martella, 22 B.R. 649, (Bkrtcy. Colo.1982). Generally speaking, "A prefer-

ence is a transfer that enables a creditor to receive payment of a greater percentage of its claim against the debtor than it would have received if the transfer had not been made and it had participated in the distribution of assets of the bankruptcy estate." In re Arnett, 13 B.R. 267, 268 (Bkrtcy.Tenn. 1981).

To establish a voidable preference the Trustee must prove all five elements of § 547(b). They are:

"any transfer of property of the debtor—

"(1) to or for the benefit of a creditor;

"(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

"(3) made while the debtor was insolvent;

"(4) made—

"(A) on or within 90 days before the date of the filing of the petition; or

\* \* \* \* \* \*

"(5) that enables such creditor to receive more than such creditor would receive if—

"(A) the case were a case under Chapter 7 of this title;

"(B) the transfer had not been made; and

"(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

■ In this case, it is undisputed that there was a transfer of property of the debtor for the benefit of a creditor made within 90 days before the date the petition was filed. See Exhibit 1. The disputed elements are § 547(b)(2), § 547(b)(3) and § 547(b)(5).

■ Pan American contends that it is premature to determine whether it has received more from the transfer than it would in a Chapter 7 liquidation under § 547(b)(5). The Trustee testified that unsecured creditors will receive 5–10% of their claim in this liquidation. Based on the Proof of Claim filed by Pan American of which I take judicial notice pursuant to FRE § 201, even if liquidation paid twice as much as the

Trustee's estimate Pan American has still received more from the transfer. Through the transfer, Pan American received $12,-575.50. Twenty percent of their Proof of Claim of $34,617.08 equals $6,923.41. Hence, it is clear that the test of § 547(b)(5) is met and Pan American received more than they would in the Chapter 7 liquidation.

At the conclusion of the plaintiff's case-in-chief, the creditor interposed a Motion to Dismiss based on the Trustee's failure to prove that the debtor was insolvent at the time of the transfer. The Motion was denied orally due to the Code's presumption of insolvency during the 90 days immediately preceding the fling of the petition. 11 U.S.C. § 547(f). At no time did Pan American adduce evidence to challenge that rebuttable presumption. Accordingly, the transfer was made at a time when the debtor was insolvent and § 547(b)(3) is satisfied.

The central issue, then, is whether the debt satisfied by the transfer was an antecedent debt as contemplated under § 547(b)(2). In other words, do the exceptions contained in § 547(c)(1) or § 547(c)(2) apply? Those sections state:

"(c) The trustee may not avoid under this section a transfer—

"(1) to the extent that such transfer was
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange;

"(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business of financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;"

■ The contemporaneous exchange exception contained in § 547(c)(1) is inapplicable because there has been absolutely no evidence that the intent of the parties was to make a contemporaneous exchange. *Collier on Bankruptcy,* 15th Ed. § 547.37, *In re Martella, supra.* Pan American admitted that Balducci paid on "past due accounts."

Hence, the key inquiry is whether the transfer was payment of a debt incurred in the ordinary course of business of the parties, made according to ordinary business terms made not later than 45 days after such debt was incurred. Although such a debt is an antecedent debt, "the purpose of this section is to leave undisturbed normal financial relations." House Report No. 95–595, 95th Congress, 1st Sess. 373–374 (1977), U.S.Code Cong. & Admin.News 1978, p. 6329.

The cases interpreting § 547(c)(2) hold that a debt is incurred on the date upon which the debtor first becomes legally bound to pay. *In re Iowa Premium Service Co., Inc.,* 695 F.2d 1109, 1111 (8th Cir.1982); *Barash v. Public Finance Corp.* 658 F.2d 504, 512 (7th Cir.1981); *In re Brown,* 20 B.R. 554 (Bkrtcy.N.Y.1982); Levin, "An Introduction to the Trustee's Avoiding Powers" 53 Am.Bankr.L.J. 173 (Spring 1979). In this instance, the debt was incurred when the parties orally agreed to deliver fuel in consideration for timely payment. Thus, the debt was incurred even before Pan American created an invoice or delivered the fuel.

■ Generally, the debtor is entitled to determine the particular debt to which payment should be applied in a situation where the debtor owes more than one debt to a creditor. *Jackson v. ABZ Lumber,* 155 Colo. 33, 392 P.2d 288 (1964), *Moser Paper Co. v. North Shore Publishing Co.,* 83 Wis.2d 852, 266 N.W.2d 411 (1978) applied in *Gander Mountain v. Impact Industries, Inc.,* 3 CCH Bankruptcy Law Reporter ¶ 69120 (Bankr.Wis. April 5, 1983). *In Jackson, supra,* 155 Colo. at pages 36–37, 392 P.2d 288 the Colorado Supreme Court held:

"The general rule is that announced by the trial court. We find the rule to be stated thusly: that a debtor owing more than one debt to a creditor has the right to direct to which debt the payment should be applied. 40 Am.Jur. (payment) 110; Restatement on Contracts, § 387; *Mumm v. Taylor,* 121 Colo. 157, 213 P.2d 836."

Accordingly, I find that the debtor unequivocally directed that check number 2962, dated February 17, 1982, be applied to Invoice No. 387 dated November 6, 1981 and Invoice No. 395 dated November 10, 1981. In fact, in light of Burr's testimony and the case law under § 547(c)(2), the payment made on February 17, 1982 was on account of debts incurred before the date of the invoices. Therefore, the February 17, 1982 transfer of $12,575.50 was made later than 45 days after the debt was incurred and the § 547(c)(2) exception does not apply.

In closing, the creditor argued that they should be permitted to setoff the preferential transfer against the dividend they will receive in the Chapter 7 liquidation. They suggest I hold this matter under advisement until a distribution occurs.

However, their request flies in the face of § 502(d) which bars the allowance of a preferential creditor's claim unless the preference is returned. The Seventh Circuit in *Barash, supra,* held that a preferred creditor *must* disgorge all payments received unless a preference exception applied. *Barash, supra,* at pages 508–509.

But, in *Page v. Rogers,* 211 U.S. 575, 29 S.Ct. 159, 53 L.Ed. 332 (1909) the United States Supreme Court held that the Bankruptcy Act of 1898, a preferred creditor should be allowed to prove its claim in liquidation against the estate and set-off the dividend from the sum required to be disgorged.

In *Gander Mountain, supra,* a Rule of Reason was applied to the holding of *Page, supra.* The Court stated:

"This very practical manner of resolving preference suits in bankruptcy courts, must, of course, be limited to those instances where the preferred creditor is entitled to receive a dividend, the dividend can be quickly and easily determined, and the dividend is immediately payable."

*Gander Mountain, supra,* at ¶ 82,119.

 This is not a case where the practical rule of *Page, supra,* should apply. This is a complex bankruptcy wherein the Trustee seeks to recover approximately $700,000 in preferences. In light of the numerous adversary proceedings instituted by Eckles and the congested nature of the bankruptcy court system, I conclude that the dividend calculation is not easily determined and readily payable, and that Pan American should disgorge the preference and await a dividend pursuant to its proof of claim. It is

ORDERED that judgment be entered consistent with the findings and conclusions herein.