**In re Barbara Jean BOAN, Debtor.**

**No. 02–17613–SBB.**

United States Bankruptcy Court, D. Colorado.

Aug. 11, 2004.

---

Douglas Larson, Esq., Grand Junction, CO, Chapter 7 Trustee.

John M. Dudgeon, Esq., Lakewood, CO, for Boulder Capital Group, Inc.

## ORDER GRANTING TRUSTEE'S MOTION TO RECLASSIFY A PORTION OF CLAIM NUMBER 26 (DOCKET # 131)

SIDNEY B. BROOKS, Chief Judge.

THIS MATTER comes before the Court on July 6, 2004 for a final hearing[1] on the Motion to Reclassify a Portion of Claim Number 26 ("Claim No. 26") ("Motion to Reclassify") filed by Douglas E. Larson, Trustee ("Trustee"), on March 24, 2004, the Response and Objection thereto filed by Boulder Capital Group ("Boulder Capital") on April 20, 2004 (Docket # 136), the Trustee's Brief in Support of the Motion to Reclassify filed on June 17, 2004 (Docket # 147), and Boulder Capital's Brief in support of its Response and Objection filed on June 17, 2004 (Docket # 148). The Court, having reviewed the file and being advised in the premises, makes the following findings, conclusions and Order.

For the reasons stated herein, the Trustee's Motion will be GRANTED and Claim No. 26 of Boulder Capital will be reclassified as an allowed unsecured claim in the amount of $75,968.69 and a penalty claim in the amount of $39,391.31.

## I. BACKGROUND

Boulder Capital filed its original claim in this case for a total of $155,360.00 based upon a judgment obtained in the Montezuma County, Colorado District Court on March 26, 2002. The judgment recites that the components of the judgment were:

---

1. A preliminary hearing was conducted on May 18, 2004. At that hearing, the Court ordered the parties to file briefs in this matter.

| | |
|---|---|
| The balance due for goods sold and delivered on open account and by contract: | $ 96,133.13 |
| Plus treble damages on an NSF check: | $ 33,087.68 |
| Plus interest on the unpaid balance at 24% per annum from and after August 22, 2001 to March 19, 2002: | $ 17,758.13 |
| Plus attorney fees and costs: | $ 2,434.00 |
| Total Amount of the Judgment: | $149,412.94 |

The original claim also added additional interest of $5,802.00 accrued through the date of filing, plus additional costs of $145.00.

During the course of the administration of this estate, the Trustee sought approval to sell a service station owned by the Debtor. Boulder Capital owned the fuel pumps and related equipment located at the station and Boulder Capital and leased the pumps and equipment to the Debtor pre-petition. Post-petition, the Trustee and Boulder Capital entered into two stipulations so as to allow the Trustee to sell the service station.

In this case, the Trustee obtained an Order from this Court to allow him to sell the stations free and clear of liens with such liens attaching the proceeds of the sale. In addition, the Trustee and Boulder Capital entered into an agreement, whereby the Trustee was allowed to sell the gasoline pumps and equipment owned by Boulder Capital at the same time as the station was sold, and to pay Boulder Capital the sum of $40,000 out of the proceeds of the sale, in return for Boulder Capital's release of its fuel pumps and related equipment.

In the adversary proceeding styled: *Larson v. Vectra Bank Colorado, N.A., et al.*, Adv. Pro. No. 02–1367–SBB, Boulder Capital and the Trustee entered into Stipulated Motion for Entry of Judgment ("Stipulated Motion"). In the Stipulated Motion, Boulder Capital and the Trustee acknowledged the agreements made in the main case and further stipulated that it would be appropriate for the Court to enter its order avoiding the judgment lien as it may attach to the proceeds of the sale of the station as a preference under 11 U.S.C. § 547.

After the sale of the station, gasoline pumps and equipment, Boulder Capital filed the claim in question, Claim No. 26, on February 14, 2003, in the amount of $115,360.00. This claim acknowledged Boulder Capital's receipt of the $40,000.00.

## II. ARGUMENTS OF THE PARTIES

The Trustee contends in his Motion to Reclassify, that, in accordance with 11 U.S.C. § 726(a)(4), claims for fines, penalties or forfeiture, or for multiple, exemplary, or punitive damages to the extent that such claims are not for actual pecuniary losses suffered by the holder of such claims are to be paid after payment has been made to the claims specified in 11 U.S.C. § 726(a)(1), (2), and (3). Consequently, the Trustee asserts that the sum of $75,968.69 must be reclassified as an unsecured claim and paid along with the other filed and timely unsecured claims according to the priorities set forth in 11 U.S.C. § 726.[2] According to the Trustee, the balance of the claim in the amount of $39,391.31, which includes the penalty for the bad check and the interest which accrued on that portion of the claim, would only receive distribution following full payment to all prior classes *and, in this case, would not receive distribution from the Trustee based on the sums on hand.*

**2.** He calculates this sum as follows:

| | |
|---|---|
| The basic amount of the liability under the contract: | $96,133.13 |
| Interest on the debt (to the date of filing): | $17,758.13 |
| Attorney fees and costs: | $ 2,434.00 |
| Costs: | $ 145.00 |
| Less amount paid pursuant to Stipulation at closing as a secured claim | $40,000.00 |
| Balance: | $75,968.69 |

The remaining amount of $115,360.00 claim in the sum of $39,391.31 relates to the penalty portion according to the trustee.

Boulder Capital, by way of its Response, contends that the Motion to Reclassify should be denied. It argues that, after execution of the stipulations and payment of $40,000.00 to Boulder Capital, Boulder Capital properly filed an amended claim in the total of $115,360.00, reflecting the receipt of a total of $40,000.00 in settlement with the Trustee. Boulder Capital contends that the sum was not earmarked by the Trustee or the parties and therefore Boulder Capital applied the $40,000.00 received as it saw fit. Boulder Capital applied the payment first against the NSF charges and attorney's fees accrued in this case, including interest upon the NSF check damages. Boulder Capital—arguing that Colorado law should prevail over the priorities set forth in 11 U.S.C. § 726—contends that, in accordance with Colorado law, if a payment is not specifically designated for application a certain way, the creditor is free to apply that payment in any way it chooses, as long as the payment is applied to the total of the debt for a specific debtor. Consequently, Boulder Capital contends that its entire claim of $115,360.00 is entitled to be classified as a general unsecured claim, without subordination pursuant to 11 U.S.C. § 726(a)(4).

### III. DISCUSSION

The Court concludes that its analysis begins and ends with 11 U.S.C. § 726(a)(4). Section 726(a) provides:

(a) Except as provided in section 510[3] of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed

before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is-

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title, if-

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under

---

3. 11 U.S.C. § 510 addresses equitable subordination. Equitable subordination, while addressed by counsel in their arguments before the Court is not the issue before the Court in this matter.

paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

■ 11 U.S.C. § 726(a)(1), (2), (3) and (4) breaks up claims into essentially two portions: (1) the portion(s) constituting compensation for an actual pecuniary loss and (2) the portion(s) constituting a penalty for wrongdoing. 6 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 726.02[4] (15th ed.2002). "The policy behind section 726(a)(4) is to protect unsecured creditors from the debtor's wrongdoing." *Id.* Moreover, "[t]his approach has been justified on the basis that an allowance of a claim based on penalty punishes innocent parties, i.e., the entire body of creditors, and not the actual wrongdoer who deserves punishment and the entity which the Statute intended to deter and punish." *In re Bicoastal Corp.*, 134 B.R. 50, 54–55 (Bankr.M.D.Fla.1991) (citations omitted).[4] The priority structure of 11 U.S.C. § 726 is clear *not only from the language itself, but from the legislative history also.*[5] Consequently, under bankruptcy law, the penalty portion of Boulder Capital's claim must be subordinated to the general unsecured creditors.

Nevertheless, Boulder Capital contends that Colorado law allows it to apply payments as it sees fit:

> Under Colorado Law (sic), if a payment is not specifically designated for application a certain way, the creditor is free to apply that payment in any way it chooses, as long as the payment is applied to the debt for a specific debtor. *Weston Group, Inc. v. A.B. Hirschfeld Press*, 845 P2 (sic) 1162 (Colo.1993); *Jackson v. A . . (sic) B.Z. Lumber Co.*, [155 Colo.33,] 392 P.2d 288 (Colo.1964).

(Boulder Capital's Brief at 3, ¶ 8.) The Court was intrigued by Boulder Capital's representation of supposed "black-letter" Colorado law with respect to application of payments, so it reviewed all the cases cited by Boulder Capital.

In the *Weston Group* case, the Colorado Supreme Court, *en banc*, concluded:

> If the debtor does not direct how the payment is to be applied, then the credi-

---

**4.** It also should be noted that in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990), the Supreme Court held that this section applies to criminal as well as civil penalties, and that the phrase "fine, penalty, or forfeiture" has the same meaning as in 11 U.S.C. § 523(a)(7). *See* 6 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 726.02[4] (15th ed.2002). Consequently, often, these fines and penalties receive low priority in distribution, but they are not discharged by the bankruptcy. Thus, the debtor, in many of these instances, would still be on the line for payment of the fine, penalty or forfeiture notwithstanding the bankruptcy discharge. *See also, Farmers Insurance Exchange v. Mills, (In re Mills)*, 290 B.R. 822 (Bankr.D.Colo.2003).

**5.** The House Report to the Reform Act of 1978 provided that:

> Paragraph (4), in combination with paragraph (2), will require that claims for fines, penalties, and damages be divided into the portion that is in compensation for actual pecuniary loss and the portion that is not. Distribution under the two paragraphs will be made accordingly.

H.R.Rep. No. 595, 95th Cong., 1st Sess 383 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6339.

The Senate Report to the Reform Act of 1978 provided that:

> Paragraph (4) provides that punitive penalties, including prepetition tax penalties, are subordinated to the payment of all other classes of claims, except claims for interest accruing during the case. In effect, these penalties are payable out of the estate's assets only if and to the extent that a surplus of assets would otherwise remain at the close of the case for distribution back to the debtor.

S.Rep. No. 989, 95th Cong., 2d Sess 96–97 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5883.

tor *generally* may apply the payment in any way that the creditor desires. *An exception to this latter rule is that if the creditor knows or should know that the payment should be applied in a particular way to protect the interest of a third person, then the creditor must apply the payment in accordance with that interest.* If neither the debtor nor the creditor exercises its right to direct application of a payment, then the payment is applied by law in order of time to the earliest matures.

*Weston Group,* 845 P.2d at 1166 (emphases added) (citations omitted). The Colorado Supreme Court also enumerated other exceptions to the general rule such as the creditor "cannot make an inequitable or unconscionable application," or "make the application to an illegal debt, or one contracted against public policy." *Id.* at n. 1 (citations omitted). Moreover, the Court recognized "that the right of a creditor to apply ... payments as it sees fit is subject to some equitable limitations." *Id.*

In the *Jackson* case, the Colorado Supreme Court concluded that:

> In the absence of direction or expression by the debtor of his intent as to how payment should be applied, the *presumption* is that he thereby assets to such applications of the funds as the creditor may desire to make. The creditor is allowed to make the appropriation in a way most advantageous for himself. *However, there are some well recognized exceptions to this rule which the facts of this case bring into play. In failing to recognize and give force and effect to the exceptions the trial court committed error.*

*Jackson v. A.B.Z. Lumber Co.,* 155 Colo. 33, 392 P.2d 288, 290–91 (1964) (emphases added) (citations omitted).

From reviewing these two cases along with the others cited by Boulder Capital's counsel, it appears that counsel's representation with respect to a creditor's right to apply payments is much broader than actually exists in the cases cited. That is, Boulder Capital maintains that absent designation or direction with respect to application of payment, the creditor is untethered by any constraints and is free to apply the payment however it pleases.[6] The Court disagrees with Boulder Capital's expansive—and, in important measure—unsupported view of the law with respect to the creditor's ostensibly unqualified rights in applying sums received on a debt. The Court concludes that, under the facts of this case, there is an exception to the *general* rule.

First, the parties entered into a Stipulated Motion for Entry of Judgment in the adversary proceeding styled: *Larson v. Vectra Bank Colorado, et al.,* Adversary No. 02–1367–SBB to allow the trustee to sell the gasoline pumps and other related equipment owned by Boulder Capital ("Stipulated Motion"). As part of this arrangement, the Trustee was to pay Boulder Capital the sum of $40,000.00 from the proceeds of the sale. Paragraph 5 of the Stipulated Motion provided that after payment of the $40,000.00:

**6.** The other cases cited by Boulder Capital (*American Gypsum Co. v. Grover Trucking Co.,* 36 B.R. 360 (Bankr.N.M.1984); *In re Corradini,* 276 B.R. 571 (Bankr.W.D.Mich.2002); *In re Galbreath,* 286 B.R. 185 (Bankr.S.D.Ga. 2002); *In re Custer,* 88 B.R. 573 (Bankr. D.Conn.1988); *Matter of Goehring,* 23 B.R. 323 (Bankr.W.D.Mich.1982); *Matter of S & W Exporters, Inc.,* 16 B.R. 941 (Bankr.S.D.N.Y. 1982)) do stand for the *general* rule that, absent direction as to how the payment is to be applied, a creditor can apply the payments as it sees fit. In most, if not all, of these cases, the courts recognized exceptions to the general rule.

The Trustee stipulates and agrees that Boulder Capital shall be allowed to file an unsecured claim for the balance that is owed by the bankruptcy estate.

From the face of the Stipulated Motion, it appears that Boulder Capital was paid from this transaction as if it were a *secured creditor*. That is, it was paid dollar for dollar based on the value negotiated and agreed to as to the value of its property being conveyed at closing.[7] Consequently, the Court would conclude that under Colorado law, Boulder Capital *was* instructed on how to apply the payment. In effect, Boulder Capital acted in contravention of the Stipulated Motion by applying the $40,000 to the NSF check charges and attorney's fees accrued in this case, including interest upon the NSF check damages, and paid down the *unsecured* portion of its claim prematurely.

■ Second, even if the Court were to conclude that the payment was not "directed" by the Trustee, the Court concludes that the overlay, construct and priorities of the Bankruptcy Code are built into the Stipulated Motion in the adversary proceeding and the agreement entered into by the parties in this underlying bankruptcy proceeding. In other words, the Stipulated Motion was *not* entered outside of the confines of a bankruptcy case between Boulder Capital and the Debtor. Instead, the Stipulated Motion was (1) entered into between Boulder Capital and the Trustee in the context of an adversary proceeding related to a bankruptcy case, (2) the Stipulated Motion was dependent upon the Trustee obtaining an order from the Court in the main case permitting him to sell the real property free and clear of liens, and (3) the judgment lien of Boulder Capital was avoided pursuant to 11 U.S.C. § 522(f) by agreement of the parties and by Order of this Court so as to avoid the judgment lien as it may attach to the proceeds of the sale of the real property as a preference under 11 U.S.C. § 547. The Stipulated Motion, *as crafted by the parties,* depended upon and was governed by bankruptcy law. What that means is Boulder Capital knew or should have been aware of the distribution scheme of 11 U.S.C. § 726. As the Colorado Supreme Court stated in *Weston Group*, an exception to the general rule of application of payments is "if the creditor knows or should know that the payment should be applied in a particular way to protect the interest of a third person, then the creditor must apply the payment in accordance with that interest." 845 P.2d at 1166. Here, the third person is the creditor body.

Third, if the Court were to deny the Trustee's Motion it would punish innocent parties, i.e., the creditor body, and not the actual alleged wrongdoer, i.e. the Debtor. Simply put, Boulder Capital is seeking to "have its cake, and eat it too," all to the detriment of the creditor body as a whole. The equities, to which Boulder Capital asserts this Court should find in its favor, point to the unsecured creditor class, not Boulder Capital. Moreover, based upon the type of claim, treble damages in the amount of $33,087.68 for an NSF check, Boulder Capital may have had a cause of action against the Debtor under 11 U.S.C. § 523(a)(2), but it has, in effect, waived the

---

7. Boulder Capital asserts that its entire claim was secured because it recorded its transcript of judgment in the county where the equipment and the debtor's real property were located, and by the original UCC filing and security interest which covered its claims under the lease with the Debtor. By stipulations of the Debtor and Boulder Capital, under 11 U.S.C. § 522(f), the lien was avoided as to the real property (Docket # s .115, 120). While this Court is not called on to ascertain the secured status of Boulder Capital at the time of the Stipulated Motion, it would appear that it was, most likely, undersecured.

same since discharge entered on September 5, 2002.

## IV. CONCLUSION ORDER

Based upon the above and foregoing,

IT IS THEREFORE ORDERED that the Trustee's Motion is GRANTED and Claim No. 26 of Boulder Capital will be reclassified as an allowed unsecured claim in the amount of $75,968.69 and a penalty claim in the amount of $39,391.31.