No. 19,868.

WARREN GARRETT *v.* JOHN E. KIMBREL, ET AL.

(376 P. [2d] 376)

Decided November 13, 1962.  Rehearing denied December 10, 1962.

Mr. THOMAS C. SINGER, for plaintiff in error.

Mrs. COLLEEN G. VAN NOCKER, Mr. VICTOR N. NILSEN, for defendants in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE DAY.

PLAINTIFF in error was one of two defendants in the trial court where the defendants in error were plaintiffs. They will be referred to as they appeared in the trial court.

Plaintiffs brought suit against the defendant and Norm Dickerson. Dickerson defaulted and trial was to the court on plaintiffs' amended complaint as to the defendant only.

Plaintiffs in the first claim alleged they were owners of adjoining real property in Thornton, Colorado, and that they entered into an oral contract with Dickerson for the erection of a party retaining wall, for which they paid Dickerson in full the sum of $665.00. The complaint further recites that notwithstanding payment to Dickerson a materialman filed a mechanic's lien on plaintiffs' property for materials furnished and delivered to Dickerson and used in the building of the wall; that the plaintiffs made demand, without avail, upon Dickerson to satisfy the materialman's claim; that plaintiffs jointly paid the materialman, in full, the sum of $314.92.

The second claim incorporated the first claim and further alleged, upon information and belief, that the defendant was financing Dickerson in the operation of Dickerson's business; that under a written instrument the defendant agreed to pay all debts incurred in the operation of Dickerson's business. It was claimed the agreement also provided that the defendant was to manage Dickerson's business and to keep books of account pertaining to all construction jobs done by Dickerson for third persons; that plaintiffs' payment to Dicker-

son for construction of the wall was paid over to the defendant pursuant to the terms of the written instrument; that the defendant knew plaintiffs' payment was for both labor and material charges incurred in building the wall. There were the usual allegations of demand upon defendant to pay the materialman's bill and his refusal to do so, although defendant acknowledged the bill had not been paid. The third claim charged the defendant and Dickerson with acts in consort which it is claimed entitled plaintiffs to exemplary damages.

Defendant's answer to the amended complaint consisted of seven defenses; the first a general denial; the second a denial of all of plaintiffs' allegations in the first claim except that plaintiffs had paid Dickerson the sum of $665.00. The other defenses set forth having no merit are not discussed.

The trial court entered judgment against the defendant in favor of each family (the Kimbrels and the Natzkes) in the amount of $157.46, plus interest and costs based upon a finding that the defendant and Dickerson were engaged in a joint adventure. The prayer for exemplary damages was denied.

The writ of error presents two questions. First, did the amended complaint state a claim upon which relief could be granted? Second, is there any evidence to support a finding of joint adventure?

Both questions are answered in the affirmative.

As to the sufficiency of the complaint, if under any of the material allegations thereof the plaintiffs are entitled to relief upon any theory, it is sufficient to state a claim. The amended complaint in this case was sufficient to give notice to the defendant concerning the transaction involved and his relationship with Dickerson upon which the claim was based. Defendant sought no additional information by motion, depositions, interrogatories, or otherwise, but was content to answer with a detailed account of his version of the controversy.

*Bridges v. Ingram, et al.,* 122 Colo. 501, 223 P. (2d) 1051.

■ On the issue of joint adventure, the evidence reveals that defendant and Dickerson were both concrete-forming contractors, and, motivated by what he viewed as an attractive and profitable business deal, defendant decided to help Dickerson, a competitor, "make a go of it as a contractor." In order to "devise some scheme" for paying Dickerson's labor and material bills, defendant agreed to finance Dickerson's accounts, and since Dickerson had inadequate tools, he agreed to supply additional equipment, of a value of $3,600.00. This arrangement was formalized by a written agreement.

In furtherance of the arrangement between defendant and Dickerson, the defendant's checking account in Texas was used to meet Dickerson's payroll and material bills. Dickerson contracted for jobs and supervised the workmen. Each weekend he presented to the defendant the bills which had accumulated during the week and the defendant signed checks in payment. In about three weeks the money in the Texas checking account in the amount of $3,000.00 was exhausted, so the defendant borrowed money from the Bank of Denver. Both defendant and Dickerson would collect accounts receivable, and in this respect Dickerson, each week, gave defendant assignments on the accounts receivable to facilitate their collection. The defendant personally collected about $7,000.00 worth of the accounts, and in at least one instance gave a discount to a customer. When collections were slow, the defendant would tell Dickerson to collect the money or he (defendant) would shut down the jobs. As payments on accounts were received, the defendant would either make a deposit in the Texas checking account, make a deposit in his personal account at the Bank of Denver, or make a payment on the loan at the Bank of Denver.

Defendant paid for repairs to Dickerson's truck and the expense of its operation. When Dickerson indicated he wanted to buy a Cadillac automobile, the defendant used $1,000.00 he had collected from various jobs to make the down-payment, and while Dickerson took possession of the car, the defendant took title in his name. Other than the check book on the Texas bank account, no business records were kept. On one occasion the defendant and Dickerson participated jointly in "floating checks" in the amount of $1,000.00, in order to obtain funds to meet Dickerson's payroll.

Looking to the specific conduct of defendant pertaining to the work on the wall for plaintiffs, defendant *personally contacted* the plaintiffs to collect payment, but plaintiffs being dissatisfied with the work done advised the defendant they would not pay until it was completed to their satisfaction. The defendant assured them this would be done. Within a few days the work was completed and plaintiffs gave Dickerson their checks, which Dickerson in turn endorsed over to the defendant. The material for plaintiffs' work was not paid for because the defendant had run out of money.

The agreement called for a 50-50 split of the profits, but no profit was made "due to poor workmanship" on jobs and because Dickerson "would pocket money" collected and not tell the defendant about it.

On August 3, 1959, the defendant and Dickerson formally dissolved their business arrangement.

█ Whether the parties were engaged in a joint adventure is a question of fact for the trial court to determine from the facts and circumstances in evidence. It is not necessary that they be shown by a specific, formal agreement, but may be shown by the parties' conduct and other factors from which it is made to appear that the relationship was, in fact, entered into. And the acts and conduct of the parties in furtherance of their purposes may speak above their expressed

declarations to the contrary. *Nels E. Nelson, Inc., v. Tarman,* 163 Cal. App. (2d) 714, 329 P. (2d) 953.

We have held too often to require citation of authority that where a case is tried to the court and there is evidence to support the findings and judgment of the trial court, they will not be disturbed on review. This is clearly such a case.

Other alleged errors dealt principally with evidence admitted or rejected at the trial. We have examined these grounds carefully and find no error.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE FRANTZ concur.