No. 22442.

M. B. THOMPSON *v.* WILLIAM R. McCORMICK.

(454 P.2d 934)

Decided May 26, 1969.    Rehearing denied June 23, 1969.

152

ALBIN ANDERSON, for plaintiff in error.

WILLIAM G. WALDECK, PARGA & DYER, for defendant in error.

*En Banc.*

Opinion by MR. JUSTICE MOORE.*

ON TWO previous occasions this controversy has been before this court on writs of error. In *Thompson v. McCormick*, 138 Colo. 434, 335 P.2d 265, this court reversed

*Retired Supreme Court Justice sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

a judgment dismissing the complaint filed by Thompson against McCormick and directed that the case be heard on the merits. Thereafter the case was tried and the trial court adjudged, *inter alia*, that no partnership relationship had been established between the parties and judgment was again entered in favor of the defendant McCormick. In *Thompson v. McCormick*, 149 Colo. 465, 370, P.2d 442, that judgment was reversed and the cause remanded for further proceedings.

Thompson asserted in his complaint that he was a partner of McCormick and that the partnership involved the business of "mining, exploring and marketing uranium and vanadium ore generally in the State of Colorado." Plaintiff Thompson alleged that McCormick had denied the partnership and refused to account, and the prayer of the complaint was for a decree that a partnership had been created and for an accounting.

The answer filed by McCormick contained a denial of any partnership relationship and an affirmative allegation that the claim of plaintiff was based upon conduct which was prohibited by the laws of the United States and the rules and regulations governing the activities of the Atomic Energy Commission. In the case last above cited the defenses interposed by McCormick were held insufficient. In the proceedings thereafter conducted a master was appointed to take evidence, hold hearings, and resolve the issues remaining to be determined.

Numerous hearings were conducted, at the conclusion of which the master submitted a lengthy "Master's Findings and Report." In this document controverted testimony was resolved, pertinent issues of fact and law were determined, and the reasoning of the master was clearly indicated in all areas of dispute. The conclusion of the master was that McCormick should account to Thompson in all matters related to the activities of "McCormick Mines," which was the name under which the partnership business was conducted. The master specifically found that McCormick should account for

"(4) The $15,000.00 profit realized by McCormick from the sale of the Mi Vida claims.

"(5) All profits received by the defendant, William R. McCormick which had their source in the profits received from the use of money which shall be found to be partnership funds."

Following the lodging of this report Thompson filed a motion to confirm it and McCormick filed twelve objections to it. When these matters were heard by the district court the objections filed by McCormick for the most part were overruled. However the court recommitted the case to the master for specific findings upon three questions, to wit:

(1) The date upon which the partnership commenced.

(2) The amount of net profit realized by McCormick when he disposed of mining properties known as the Mi Vida claims.

(3) A specific finding as to whether Thompson made his contribution of $10,000 to the partnership, and if so, how, and if not, was the payment waived or otherwise satisfied.

Except as indicated above, the trial court acting through district judge E. L. Dutcher approved the master's report.

The master reported back that he could not make the requested findings until the accounting had been completed, whereupon the district court recommitted the cause to him for determination of all remaining issues, including the accounting, to be finalized by the submission of his "findings of fact and conclusions of law." Additional hearings were held and the master's conclusions were reduced to written form and presented to the district court on November 22, 1965.

The master found that upon termination of the partnership relationship there was due Thompson from McCormick the sum of $20,163.47. He specifically identified various assets of the partnership, the total value of which justified the above mentioned award to Thompson. Included in the items to be accounted for was the sum of

$15,000 admittedly received by McCormick for the sale of mining properties known as Mi Vida claims. McCormick who owned a 49% interest in Mi Vida contended that the partnership had no interest whatever in these claims. It is not disputed that McCormick acquired his Mi Vida interest under a grubstake agreement with one Charles A. Steen which had been in effect several years prior to the formation of any partnership with Thompson. The deed from Steen to McCormick conveying the 49% interest in Mi Vida was executed and delivered at least eight months before any partnership was entered into with Thompson and more than one year before any drill belonging to the partnership was used on Mi Vida claims.

The master fixed a value on the unexpired A.E.C. lease on properties operated by the partnership at the sum of $2,000. Thompson insisted that this valuation was far too low. The master's conclusions of law contained a statement that Thompson was entitled to the benefits provided in C.R.S. 1963, 104-1-42 by the terms of which he was entitled to be paid

"an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership."

The final report of the master was objected to by both parties. McCormick objected to the inclusion of the $15,000 received upon sale of Mi Vida claims as an item to be accounted for, and Thompson argued that the unexpired term of the lease had been grossly undervalued. The master's report and the objections thereto were considered by district judge William S. Eakes, to whom the case was assigned following the death of Judge Dutcher who had ruled upon the master's first report. The judgment entered by the district court to which Thompson directed this writ of error contains the following language:

"Paragraph (c) of the Master's Findings and the following item in paragraph (k) of said findings, to-wit: 'One-

half sale, of Mi Vida Claims $7,500.00,' although based upon a previous Order of this Court by a different judge, require the approval or disapproval of this Court, This Court cannot conscientiously approve the Master's Report as to these findings because it is convinced that the proceeds of the sale of Defendant's interest in the Mi Vida claims has been, as a matter of law, improperly considered an asset of the partnership."

The only evidence relating to the right of Thompson to share in proceeds derived from the sale of Mi Vida claims was that for about four days a drill owned by the partnership, and manned by two partnership employees, had been used by McCormick in developing those claims. The trial court said, *inter alia:*

"A partner, accountable as a fiduciary under Section 21 of the Uniform Partnership Law, must account for any 'benefit' and 'profits' derived by him from use of partnership property. Here the 'benefit' and 'profit' would be the rental value of the partnership equipment wrongfully used, not the value of the property upon which it was used. There is no basis for the finding that the 'benefit' was the entire value of the Defendant's interest. The property interest was not acquired as a result of the use of the drill. The drill did not create wealth, it merely exposed what was already there. The partnership should have been credited with the rental value of $1.50 per foot drilled and $100.00 transportation cost, or the sum of $275.50. Paragraph (c) and the item of $7,500.00 in Paragraph (k) of the Master's Report are clearly erroneous and are, hereby disapproved and vacated. Instead one-half of the rental and transportation va ue in the sum of $137.75 should be included. Where a case, as here, was previously handled by one trial judge, and, before it was completed, it was assigned to another trial judge, both serving at different times as judges of the same court, the latter judge may vacate or modify the orders of the previous judge where palpably in error,

inasmuch as it is the same court acting although through another judge. * * *"

Pursuant to the foregoing the trial court entered judgment in favor of Thompson for the sum of $12,801.22, together with interest thereon to be computed from February 5, 1953, at the rate of 6% per annum. This was a reduction of $7,362.25 in the amount recommended by the master.

The trial court did not err in reaching the conclusion above quoted. Under the circumstances disclosed by the record in this case the modification of the order originally entered by Judge Dutcher was not a violation of C.R.S. 1963, 37-4-17 (which deals with the powers of judges in multiple judge districts) wherein it is provided that,

"* * * neither of said judges shall have power to vacate or modify a judgment, decree or order rendered or made by another judge of the same court."

*Denver Electric and Neon Service Corp. v. Gerald H. Phipps, Inc.* 143 Colo. 530, 354 P.2d 618.

Following the determination by the master that Thompson was entitled to elect whether to accept interest on the amount due him, or, "in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership," Thompson's attorney filed a motion in which he sought the production for inspection of certain documents pertaining to personal financial transactions of McCormick and his wife. The alleged basis for the motion was that McCormick had placed monies received from the sale of Mi Vida claims in his personal account and thus converted partnership funds to his own use, therefore Thompson was entitled to trace the use made of these funds and to share in any profit derived therefrom. The trial court correctly disposed of this argument by the following language:

"After elimination of the proceeds of the sale of the Mi Vida Claims from the partnership assets there remain no

partnership assets which were commingled with defendant's assets."

Admittedly, the claimed right of Thompson to trace the use of funds is grounded upon the assumption that proceeds from the Mi Vida sale were an asset of the partnership. The trial court correctly ruled to the contrary.

█ █ Thompson's third contention is that the trial court erred as a matter of law in accepting the master's finding that the A.E.C. lease had a value of $2,000 on the date of the termination of the partnership. There was competent evidence before the master supporting this valuation. It is true that there was other evidence that the lease had a much higher value at that time which the trial court might have accepted had it heard the evidence. However, the trial court was obligated to accept the decision of the master on this question unless it was "clearly erroneous." R.C.P. Colo. 53 (e) (2). *Hutchinson v. Elder,* 140 Colo. 379, 344 P.2d 1090. In this case it cannot be said as a matter of law that the valuation fixed by the master, which was approved by the trial court, was "clearly erroneous."

We find no error warranting reversal of the judgment. The judgment is affirmed.

MR. JUSTICE PRINGLE and MR. JUSTICE GROVES not participating.