**David YODER, Plaintiff-Appellee,**

v.

**Steven J. HOOPER,
Defendant-Appellant.**

**No. 82CA0851.**

Colorado Court of Appeals,
Div. II.

Sept. 20, 1984.

Rehearing Denied Dec. 27, 1984.

Certiorari Granted March 18, 1985.

Hutchinson, Black, Hill, Buchanan & Cook, John A. Purvis, Boulder, for plaintiff-appellee.

Nelson & Harding, John S. Finn, Denver, for defendant-appellant.

SMITH, Judge.

This litigation arose out of an alleged breach of a partnership agreement between the plaintiff, David Yoder and the principal defendant, Steven J. Hooper. Following trial to the court, judgment was entered in favor of plaintiff and against Hooper. Hooper appealed. We affirm.

In the fall of 1976, Yoder and Hooper entered into a business venture for the manufacture, distribution, and sale of frozen yogurt. The precise nature of this venture was not defined, but Yoder testified extensively at trial that he believed the two were to pool their resources and expertise and to share the profits, losses, and decision-making equally. In the spring of 1977, Yoder and Hooper incorporated their venture under the name of Beautiful Daydreams, Inc., designating themselves as its directors and officers, but issued no stock.

Aside from an initial meeting of the board of directors of Beautiful Daydreams at the time of incorporation, no other director's meeting was held until November of 1978. By that time a third person, Brian Bradley, had been appointed to the board. In November of 1978, Bradley and Hooper met, in the absence of Yoder, and issued ninety-five shares of stock in Beautiful Daydreams to Hooper and five shares to Bradley. No shares were issued to Yoder. Subsequently, at a meeting of shareholders in January of 1979, Hooper and Bradley voted to terminate Yoder's involvement in Beautiful Daydreams and approved payment to Hooper of a total salary of $141,-000 for the years 1977 through 1981.

Yoder subsequently filed suit against Hooper and Beautiful Daydreams, initially alleging several causes of action. At the conclusion of plaintiff's case, the trial court permitted amendment of the complaint, pursuant to C.R.C.P. 15(b), to state a single claim for relief for breach of fiduciary duty, to which Hooper did not object. The trial court, accepting Yoder's testimony as credible in all material respects, found that Hooper held one-half of the shares of stock issued to him and one-half of the $141,000 salary in constructive trust for Yoder. The claims against Beautiful Daydreams, Inc., were dismissed.

## I.

On appeal, Hooper first contends that "irregularities" in the proceedings below deprived him of a fair trial. We disagree.

The first group of "irregularities" concerns the alleged variance between the claims for relief stated in the complaint and the theories on which Yoder actually proceeded to trial and obtained judgment. Specifically, Hooper contends that the trial court erred in denying his motion to strike plaintiff's trial data certificate for having stated claims not raised in the complaint and because it did not properly set forth the legal authorities relied upon; in denying his motion to strike plaintiff's "trial memorandum" as not timely filed; and in denying his motion for directed verdict. We disagree with each contention.

■ Under our rules of civil procedure, the precise legal theory asserted by a claimant is not controlling, so long as the complaint gives sufficient notice of the transaction sued upon. *Continental Sales Corp. v. Stookesberry,* 170 Colo. 16, 459 P.2d 566 (1969); *Bridges v. Ingram,* 122 Colo. 501, 223 P.2d 1051 (1950). The scope of issues raised by a trial data certificate is, therefore, limited only by the breadth of notice provided by the complaint. C.R.C.P. 121(b)(1–18).

■ The complaint herein referred to Yoder and Hooper as "joint and equal owners" of a joint business enterprise. It alleges that the parties discussed establishing a "more formal partnership" or "more formally structured partnership," alleges breach of contract and fraud in the failure to issue fifty percent of the stock to Yoder, and requests imposition of a constructive trust on the stock and salary. The complaint having put Hooper on notice that the breach of a fiduciary duty established by a partnership relation was at issue, the trial

court did not err in denying Hooper's motion to strike the trial data certificate.

■ Nor did Yoder's failure to include a citation of legal authorities in the trial data certificate, and the late filing of those authorities in the trial memorandum, deprive Hooper of a fair trial. Rather, Hooper's competent discussion of the case law in his closing argument demonstrates that no substantial right was affected by the trial court's denial of his motion to strike the trial memorandum. C.R.C.P. 61.

■ The denial of Hooper's motion for directed verdict was also proper in light of the amendment of the complaint. Hooper did not object at trial or in his motion for new trial to Yoder's amendment of the complaint, he cannot now challenge that action. *Matthews v. Tri-County Water Conservancy District*, 200 Colo. 202, 613 P.2d 889 (1980); *Wickland v. Snyder*, 39 Colo.App. 403, 565 P.2d 976 (1977). Since the evidence presented established the validity of the amended claim, the motion for directed verdict was properly denied.

Hooper also asserts that a remark by the court and a remark by Yoder's attorney during closing arguments deprived him of a fair trial. Again we disagree.

■ We cannot see how the remark by plaintiff's attorney, that he was "mad," in any way affected a substantial right of Hooper, and therefore, we will not address that issue further.

■ The allegedly improper remark by the court arose during Hooper's discussion of the credibility of witnesses. Interrupting Hooper's attempt to comment on the credibility of each witness, the trial court indicated its lack of concern for the credibility of all but the principal witnesses. However, the findings of the trial court expressly reflect upon the credibility of one minor witness. Hooper alleges he was deprived of the opportunity to explain to the court why it should not have believed this witness. The court having found the testimony of this witness not to be material, however, no substantial right was affected. C.R.C.P. 61.

## II.

Hooper next asserts that the trial court erred in awarding damages on a partnership claim without first requiring an accounting. We disagree.

■ Although we agree with Hooper that as a general rule an action for damages for breach of partnership obligations may not be maintained in the absence of an accounting, *Boner v. L.C. Fulenwider, Inc.*, 32 Colo.App. 440, 513 P.2d 730 (1973), that rule does not apply where the plaintiff seeks specific equitable relief. 2 *S. Rowley, Partnerships* § 48.4 (2d ed. 1960); *see L.H. Heiselt, Inc. v. Brown*, 108 Colo. 562, 120 P.2d 644 (1941). Because a constructive trust is a creature of equity, *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979), as Hooper admits, and because complete relief could be granted without resort to an accounting, no such accounting was necessary.

## III.

Hooper also asserts that the trial court erred in awarding "damages" under partnership law instead of denying them under corporate law. Again, we disagree.

Hooper's argument misconstrues the nature of relief awarded. The trial court did not calculate damages stemming from breach of a contract; rather, it imposed a constructive trust pursuant to § 7–60–121, C.R.S., on what it found, in essence, to be partnership property usurped by Hooper in breach of his fiduciary obligations. *Cf. Page v. Clark, supra; Thompson v. McCormick*, 169 Colo. 151, 454 P.2d 934 (1969).

■ Absent an express agreement, no partner may take a salary for partnership business. *Peck v. Alexander*, 40 Colo. 392, 91 P. 38 (1907). There being no such agreement here, it was proper to impose a constructive trust on one-half of the salary taken by Hooper. *Page v. Clark, supra*. Similarly, because the court found that the parties did agree to share equally any stock

issued, a finding supported by the record, it was proper to impose a constructive trust on one-half of the stock issued to Hooper in breach of that agreement. Section 7–60–121, C.R.S.

## IV.

Hooper next asserts that the evidence was insufficient to support the trial court's finding that Hooper and Yoder entered into a partnership in late 1976 or early 1977. Again, we disagree.

 As the trial court correctly stated, a partnership is an association of two or more persons to carry on as co-owners a business for profit. Section 7–60–107(1), C.R.S.; *Roberts v. Roberts,* 113 Colo. 128, 155 P.2d 155 (1945). It may also be defined as an express or implied contract between two or more persons to place their money, skill, effects, or labor into a business and to share the profits and losses. *Damrell v. Creagar,* 42 Colo.App. 281, 599 P.2d 262 (1979). Further, no express agreement is necessary; rather, a partnership may be formed by the conduct of the parties. *Garrett v. Kimbrel,* 151 Colo. 95, 376 P.2d 376 (1962); *Lindsay v. Marcus,* 137 Colo. 336, 325 P.2d 267 (1958).

 The trial court found that Yoder and Hooper agreed in the fall of 1976 to combine their money, labor, and skills to form a business for the manufacturing and selling of frozen yogurt bars for profit, and to share the profits and losses equally. The record demonstrates that both parties contributed $15,000 to form the enterprise; that they both contributed an additional $10,000 to sustain the enterprise; that they both signed an important marketing contract; and that they both expected to profit by the venture. Yoder's testimony demonstrates an intent to establish a partnership; to share equally in the responsibilities and workload of the partnership; and to share the profits and losses equally. The trial court's finding that the relationship was that of a partnership being overwhelmingly supported by the record, it is therefore binding on appeal. *Page v. Clark, supra.*

## V.

Hooper next contends that, even if it is assumed that a partnership was formed in the fall of 1976, all of his fiduciary obligations to Yoder arising therefrom ceased either upon the incorporation of Beautiful Daydreams in May of 1977 or upon Hooper's exclusion of Yoder from the corporation in January of 1979. We disagree.

 Section 7–60–131, C.R.S., provides that a partnership may only be dissolved by "the express will of any partner when no definite term or particular undertaking is specified." Where a particular undertaking is involved, however, equity will not permit the unilateral withdrawal of one partner to the detriment of the other. *Lindsay v. Marcus, supra.* During a specified term of existence or in the midst of a particular undertaking, a partnership may only be dissolved by a mutual agreement which settles the rights and obligations of the parties *inter se,* or by judicial decree which determines such rights and obligations.

 Here, the trial court found that Hooper and Yoder each committed themselves by the investment of time and money to a partnership for the purpose of manufacturing and selling frozen yogurt bars for profit and that this was a continuing enterprise. We hold that this factual finding by the trial court, which is binding on appeal, identifies a "particular undertaking" for the duration of that specific venture. *Zeibak v. Nasser,* 12 Cal.2d 1, 82 P.2d 375 (1938); *Bates v. McTammany,* 10 Cal.2d 697, 76 P.2d 513 (1938).

Further, because this partnership could not be unilaterally terminated, the partnership rights and obligations existing between Hooper and Yoder did not terminate upon the incorporation of Beautiful Daydreams. Rather they continue until the termination of the partnership's purpose, *Lindsay v. Marcus, supra; Kincaid v. Miller,* 129 Colo. 552, 272 P.2d 276 (1954); *see also Elsbach v. Mulligan,* 58 Cal. App.2d 354, 136 P.2d 651 (1943); *Jolin v.*

**1188**

*Oster,* 44 Wis.2d 623, 172 N.W.2d 12 (1969), or until they have been resolved by either *mutual* agreement or judicial decree.

To hold otherwise would be to permit one partner unilaterally to withdraw from an existing partnership to the detriment of the remaining partner, through the expediency of incorporation, in contravention of the rule stated in *Lindsay v. Marcus, supra.* The partnership relation having not been extinguished by the incorporation of Beautiful Daydreams nor by Hooper's unilateral actions, Hooper breached his fiduciary obligations in failing to issue fifty percent of the stock to Yoder and in unilaterally voting himself a retroactively effective salary. *Lindsay v. Marcus, supra; Kincaid v. Miller, supra.*

### VI.

Hooper also contends that the trial court erred in dismissing his affirmative defenses without making specific findings. Again, we disagree.

A trial court need only enter findings on the material and ultimate facts of the case. *Lininger v. Lininger,* 138 Colo. 338, 333 P.2d 625 (1958). The trial court need not assert in detail which propositions are accepted and which are rejected, *Uptime Corp. v. Colorado Research Corp.,* 161 Colo. 87, 420 P.2d 232 (1966), but may simply state that the evidence supports or repudiates a claim or defense. *Uptime Corp. v. Colorado Research Corp., supra; Lininger v. Lininger, supra.*

The court carefully questioned Hooper concerning some of his affirmative defenses at trial, and expressly found that Hooper had "failed to establish by a preponderance of the evidence the existence of any affirmative defenses." That was sufficient. *Uptime Corp. v. Colorado Research Corp., supra; Lininger v. Lininger, supra.*

Judgment affirmed.

VAN CISE and STERNBERG, JJ., concur.