A.B. HIRSCHFELD PRESS, INC.,
a Colorado corporation,
Plaintiff–Appellee,

v.

WESTON GROUP, INC., Defendant–
Appellant.

No. 90CA1061.

Colorado Court of Appeals,
Div. I.

July 18, 1991.

Rehearing Denied Aug. 22, 1991.

Certiorari Granted Feb. 3, 1992.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Elrod, Katz, Preeo, Look, Moison & Silverman, P.C., Jersey M. Green, Denver, for plaintiff-appellee.

Waldbaum, Corn, Koff and Berger, P.C., Michael H. Berger, Denver, for defendant-appellant.

Opinion by Judge RULAND.

In this action for money damages, defendant, Weston Group, Inc., appeals from a judgment entered after a bench trial awarding A.B. Hirschfeld Press, Inc., plaintiff, the full amount of damages it sought plus interest and costs. We affirm.

Page Gallery Productions, Inc., (PGP) had a non-assignable license with the National Football League (NFL) to print football posters. PGP retained a marketing consultant to assist in securing marketing outlets for its posters. Pursuant to the consultant's recommendation, PGP entered into negotiations with Weston.

Although these negotiations resulted in several written proposals, the parties never executed a written contract. Conversely, the final draft was acceptable to both parties, and the agreement was not signed only because PGP was dissatisfied by Weston's marketing efforts as of the date the agreement was forwarded for signature.

PGP had previously contracted with Hirschfeld to print posters in connection with a pizza chain promotion. This promotion was not included in the negotiations with Weston.

Subsequently, Hirschfeld also agreed to print NFL posters for PGP. However, PGP did not enter into a separate contract with Hirschfeld regarding this project. Further, separate account receivables were not established by Hirschfeld for the separate projects. During the course of negotiations with Weston, PGP experienced financial problems and was unable to pay Hirschfeld. PGP requested and obtained a loan from Weston which was evidenced by a promissory note signed by PGP. PGP made payments of approximately $49,000 to Hirschfeld from either the proceeds of poster sales or from the funds borrowed from Weston without specifying to Hirschfeld how the payments should be allocated.

Weston had no knowledge of the contract between PGP and Hirschfeld. Similarly, Hirschfeld had no knowledge of any relationship between PGP and Weston. However, after filing suit against PGP and learning of Weston's involvement with PGP through discovery, Hirschfeld was permitted to amend its pleadings and assert a claim against Weston.

Following presentation of evidence, the court found that PGP and Weston had orally agreed that Weston would promote and market the football posters, that Weston would receive 50% of the profits, and that, if there were any losses for a given year, the parties' share of those losses would be deducted from any future profits. The court also found that the parties intended to enter into a joint venture and that all elements of a joint venture were present in their dealings.

The trial court concluded, as a matter of law, that Hirschfeld had the right to apply the payments by PGP to the printing bills due from the pizza promotion because those billings were prior in time to the billings for the NFL posters.

I

Contending that the evidence was insufficient in various respects to establish a joint venture, Weston asserts that the judgment must be reversed as a matter of law.

## A

■ Weston first contends that the trial court erred in finding that the parties intended to enter into a joint venture. In support of this contention, Weston notes that a written agreement was never signed, and it points to certain testimony that execution of a written agreement was intended. Weston further contends that no agreement was reached relative to how losses would be shared. We find no error.

■ A joint venture is a partnership formed for a limited purpose, and it is unnecessary to execute a written agreement in order to form the venture. *See Garrett v. Kimbrel,* 151 Colo. 95, 376 P.2d 376 (1962). Instead, as held in *Edwards v. Price,* 191 Colo. 46, 550 P.2d 856 (1976), the evidence must establish an express or implied agreement on only three elements:

(1) A joint interest in the property;

(2) An agreement to share in the profits and losses of the venture; and

(3) Actions and conduct showing cooperation in the project.

■ The determination of whether a joint venture exists is a question of fact, and this court is bound by the trial court's findings unless they are based upon a misapplication of the law or there is no support in the record. *Realty Development Co. v. Feit,* 154 Colo. 44, 387 P.2d 898 (1963).

Here, there is record support for the court's conclusion that a joint venture existed notwithstanding the fact that the written agreement was not signed. The failure to sign the agreement was not predicated upon any failure to reach agreement on the venture terms.

Contrary to Weston's contention, there was competent evidence from which the court could find the requisite agreement for allocation of any losses suffered by the venture. Consistent with the applicable provisions of the final draft agreement, PGP paid or attempted to pay all production costs and Weston absorbed its marketing expenses.

Losses were to be recovered from future profits. Therefore, unlike the agreement reviewed by this court in *Colorado Performance Corp. v. Mariposa Associates,* 754 P.2d 401 (Colo.App.1987), the parties here agreed upon a structure which precluded one party from receiving a profit and the other a loss. Accordingly, we conclude that the requirements for a joint venture were established.

The venture was, of course, abandoned. The abandonment does not, however, render ineffective the prior agreement to allocate between the parties the expenses of the different undertakings and thus, in effect, to absorb those expenses as losses if no profits result.

## B

Weston next contends that there is insufficient evidence establishing that the parties had a joint interest in the property of the venture because the non-assignable interest in the NFL license was solely in PGP's name and because PGP owned the posters and transparencies from which the posters were made. Weston also contends, in effect, that a venture was not formed because different duties were assigned to each party by their agreement and that Weston's commitment only to sell the posters was insufficient to constitute it a venturer. We disagree with both contentions.

■ A joint interest arises when the parties agree to commit their property, money, credit, labor, and skills to the venture. *See Hooper v. Yoder,* 737 P.2d 852 (Colo.1987); *Werkmeister v. Robinson Dairy, Inc.,* 669 P.2d 1042 (Colo.App.1983). However, there is no requirement that title to all property interests be conveyed to the joint venture. Rather, the joint interest contemplated is that of making a profit from shared property interests or contract rights. *See Hancock Construction Co. v. Cummins,* 791 P.2d 1208 (Colo.App.1990); *Agland, Inc. v. Koch Truck Line, Inc.,* 757 P.2d 1138 (Colo.App.1988).

Here, the evidence confirms that the parties by their actions and conduct joined efforts to produce and market the NFL posters. The parties communicated with each other on a regular basis, jointly decided on which posters to print and how many,

agreed on an accounting system to .track revenue and costs associated with the poster project, and PGP undertook production of the posters while Weston initiated marketing efforts.

## II

■ Next, Weston contends that even if there was sufficient evidence to establish a joint venture, it is not liable because the scope of the joint venture did not include the production and printing of the NFL posters but only the marketing of these items. In the alternative, Weston contends that the contract PGP entered into with Hirschfeld did not bind the joint venture absent Hirschfeld's reliance on the joint venture or the credit of Weston. Again, we disagree with both contentions.

The acts of one joint venturer are binding upon other joint venturers if those acts pertain to matters within the scope of the joint venture and the joint venturer had authority to act. *See* § 7–60–109, C.R.S. (1986 Repl.Vol. 3A).

Here, production was an integral part of the venture. The printing expense was contemplated by the parties, and there is no legal requirement that, to form a venture, the parties may not allocate, as between them, which expenses will be advanced by each. *See Hancock Construction Co. v. Cummins, supra.* Since the printing expenses were within the scope of the agreement, PGP had authority to bind the joint venture even absent Hirschfeld's reliance on the venture.

## III

Lastly, Weston contends that the trial court erred in permitting Hirschfeld to allocate the payments made by PGP to the oldest items on the PGP account. We disagree.

■ The rule in Colorado is stated in *Jackson v. A.B.Z. Lumber Co.,* 155 Colo. 33, 392 P.2d 288 (1964):

"In the absence of direction or expression by the debtor of his intent as to how payment should be applied, the presumption is that he thereby assents to such application of the funds as the creditor . may desire to make. The creditor is allowed to make the appropriation in a way most advantageous for himself."

If neither a debtor nor a creditor expressly mandates otherwise, payments on open accounts are applied in order of time to the earliest accrued and unpaid. *West Denver Feed Co. v. Ireland,* 38 Colo.App. 64, 551 P.2d 1091 (1976). While this rule may not apply when the interest of a third party is known or should have been known to the creditor, here Weston's venture interest was unknown to Hirschfeld.

Weston urges this court to adopt Restatement (Second) of Contracts §§ 259 and 260 (1981). Restatement § 259 provides that if a debtor does not direct application of a payment between two or more mature debts, a creditor must notify the debtor as to his intention to make application of the payment within a reasonable time. If the creditor fails to manifest his intent within a reasonable time, the application is ineffective. *See* Restatement (Second) of Contracts § 259 comment b (1981). Application of Restatement § 259 here would thus invalidate Hirschfeld's application of the PGP payments.

If the application made by the creditor is ineffective, then Restatement § 260 governs how payment should be made. Under this section, payments are applied with due regard to the interests of third persons. Preference is given to those debts for which the obligor owes a third person a duty to pay. Restatement (Second) of Contracts § 260(2)(a) (1981) (see especially comment b). Hence, Weston would not be liable in this case because of PGP's duty under the venture to pay the cost of printing the NFL posters.

We concur with Weston's contention that, under the circumstances of this case, application of the cited sections of the Restatement would yield a more equitable result because Hirschfeld looked only to the credit of PGP in reaching its decision to print the posters. However, contrary to Weston's contention, we view the decision in *Jackson v. A.B.Z. Lumber Co., supra,*

as precluding us from applying Restatement §§ 259 and 260.

We have considered and find no merit in Weston's other contentions.

The judgment is affirmed.

PIERCE and DUBOFSKY, JJ., concur.