**HO PYO HONG and AOTEAROA HONG,**
**dba KOREANSA SHIPPING AGENCY, Plaintiffs,**

**v.**

**CHUNG YONG #21, its gear, nets and appurtenances,**
**Defendant in Rem.**

High Court of American Samoa
Trial Division

CA No. 22-98

November 29, 2001

Before RICHMOND, Associate Justice, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiffs, Charles V. Ala`ilima
 For Defendant, Paul F. Miller

## OPINION AND ORDER

Plaintiffs Ho Pyo Hong ("Ho Pyo") and Aotearoa Hong (together "the Hongs") initiated this *in rem* action against defendant vessel Chung Yong #21 ("Chung Yong") to collect a portion of the *in personam* judgment rendered in Ho Pyo's favor in *Korea Deep Sea Fisheries Association v. Hong*, CA No. 78-92, slip op. (Trial Div. Jan. 9, 1997). The Hongs' claim that the judgment against the Korea Deep Sea Fisheries Association ("KDSFA") entitles them to *in rem* judgment or attachment against the vessels owned by members of KDSFA, and specifically against the Chung Yong for supplies in the amount of $7,517.63. The court holds for the Hongs.

### Facts

In 1992, KDSFA brought suit against Ho Pyo, CA No. 75-92, alleging debts for failure to fulfill ship supply contracts. Ho Pyo filed a counterclaim for unpaid loans to KDSFA and unpaid invoices to KDSFA vessels. On January 9, 1997, judgment was rendered *in personam* for Ho Pyo in the amount of $1,339,344.05. The Chung Yong was one of the KDSFA vessels with outstanding invoices. This claim is based on four invoices, one dated August 24, 1990, and three dated August 31, 1990.[1] The invoices were for food supplies and other provisions, such as liquor and tobacco, which were delivered to the Chung Yong by the Hongs.

Following the judgment in CA No. 78-92, KDSFA shut down its operations in American Samoa on November 6, 1997. In Saeng Lee, the former manager of KDSFA in American Samoa, has since established a new agency in the territory to effectively continue with these operations. In order to collect the debt included in the judgment in CA No. 78-92, the Hongs had the Chung Yong arrested on March 3, 1998, after it

---

[1] The invoices total $7,777.73. The Hongs, however, claim only $7,517.63. There is no clear explanation for the discrepancy. The documents pertaining to the judgment in CA No. 78-92 do not provide an exact accounting of the sums used to reach the judgment amount. However, based on the evidence presented in this case, we find the amount of the judgment in CA No. 78-92 related to the Chung Yong for purposes of this action is $7,777.73.

entered Pago Pago Harbor. On March 4, 1998, the Hongs and the Chung Yong's local agent entered into a stipulation under which the Chung Yong was released upon the deposit of $10,000 into the Court's registry.

## Discussion

A. Jurisdiction

■ This matter is properly before this Court. The Court has both common law general jurisdiction and admiralty jurisdiction. *Gray, Cary, Ames & Frye v. HGN Corp.*, 6 A.S.R.2d 64, 69-70 (App. Div. 1987); *Sec. Pac. Nat'l Bank v. M/V Conquest*, 4 A.S.R.2d 59, 61 n.1 (Trial Div. 1987). Because of the Court's dual jurisdiction, the case could lie in this Court on either of two supplemental rules for admiralty and maritime claims, T.C.R.C.P. B (Attachment and Garnishment) or C (Action *in Rem*). The difference between the two is the difference between a common law quasi-in-rem action to answer for the in personam judgment in CA No. 78-92, Rule B, and an admiralty law *in rem* action on a maritime lien for the provision of supplies, Rule C. The Chung Yong was properly seized for a Rule C *in rem* proceeding, which the Hongs fully argued before the court. We will, however, consider this action as one that concerns the execution of a civil judgment through Rule B attachment against the property of a judgment debtor, an action which perfects a lien against the property. *See Diocese of Samoa Pago Pago v. K.M.S.T., Inc.*, 18 A.S.R.2d 67, 69 (Land & Titles Div. 1991). The discretion of the court to proceed under Rule B does not destroy the proper seizure of a vessel. The property properly attached was the Chung Yong, its gear, nets, and appurtenances.

Our decision to decide this action on Rule B attachment and partnership liability grounds does not reflect any judicial determination as to the Rule C *in rem* claim, nor the existence of a maritime lien. The successful Rule B attachment makes it unnecessary to reach those other issues at this time. However, the Hongs presented valid alternative arguments, and we reserve opinion on them. We proceed from this position.

B. Res Judicata Effect of CA No. 78-92

■ In CA No. 78-92, this Court found that KDSFA, as it did business with Ho Pyo, was "a legal entity," that it represented itself as "an association of boat owners," and that equity mandated it be estopped from denying its legal status. *Korea Deep Sea Fisheries Ass'n*, 31 A.S.R.2d at 83.[2] This Court has therefore already determined that

---

[2] "Here KDSFA did business with Hong as a legal entity. Moreover, KDSFA instituted the present action in its own name. Equity mandates

KDSFA is not merely an agent for the vessels under its control. It is a business entity with a vested ownership interest in these vessels. Hence, we will treat KDSFA as a legal entity in this action, and further determine that KDSFA is a partnership of its members and that principles of partnership liability thus apply to this action.

 Full faith and credit requires this court to respect the *res judicata* effect of an earlier judgment in deciding the same issues presented in an action currently litigated. U.S. CONST., Art. IV, § 1; *In re A Minor Child*, 28 A.S.R.2d 33, 35 (Trial Div. 1995): Res judicata applies to a "final" judgment between the "parties" or those in privity with them. RESTATEMENT (SECOND) OF JUDGMENTS § 17 (1988); *Puailoa v. Estate of Lagafuaina*, 19 A.S.R.2d 40, 46 (App. Div. 1991). The judgment in CA No. 78-92 is a full and final judgment of this Court. KDSFA and Ho Pyo were both parties to CA No. 78-92, and KDSFA is estopped from denying the appropriate application of *res judicata* on the issues in this action.

C. KDSFA as a Partnership

 A partnership is a "business owned by two or more persons that is not organized as a corporation. A voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them." BLACK'S LAW DICTIONARY 1120 (6th ed. 1990); *see also Meehan v. Valentine*, 145 U.S. 611, 618-19 (1892). While a contract is needed for a partnership to exist, this contract may be implied from the conduct and circumstances alone. *Temple v. Temple*, 365 N.W.2d 561, 566 (S.D. 1985); *Yoder v. Hooper*, 695 P.2d 1182, 1187 (Colo. Ct. App. 1984). One of the fundamental tests to determine the existence of a partnership is whether there existed a community of interest among the parties for business purposes. 59A AM. JUR. 2D *Partnerships* § 157 (1987).

The evidence in this action established that between 1990 and 1997 the vessel was owned by Daerim Corporation ("Daerim'), a Korean corporation, and that Daerim was a member of KDSFA. Further, Daerim placed their property in lawful commerce in combination with the other

---

that KDSFA be estopped from now denying its existence as a legal entity, rather than merely an agent of its members. We thus find that KDSFA is a legal entity, with the capacity to sue and be sued on its own behalf." *Korea Deep Seas Fisheries Ass'n v. Hong*, 31 A.S.R.2d 80, 83 n.1 (Trial Div. 1996).

members of KDSFA. The members expected to and did receive a proportional share of the profits from the venture. The KDSFA office in American Samoa was not operating solely as an agent for the individual vessels it served, but in fact it controlled the activity of KDSFA members' vessels, the catch, sales, and financial affairs of those vessels, and the remittance of profits back to the KDSFA members in Korea. A "community of interest" existed amongst the KDSFA members for their operations in American Samoa. KDSFA did not produce any credible evidence to refute the existence of a partnership. There was not any sort of fee-paying arrangement between the KDSFA members and KDSFA's local agent in American Samoa that would allow a conclusion other than finding that there was an agreement to receive a share of the profits of the partnership. Based on the records introduced into evidence, it appears that KDSFA remitted profits to the partnership members. There is no credible evidence that Daerim did not receive a proportional share of these profits. This collection of actions shows, and we hold, that at the very least an implied partnership contract existed between the members of the KDSFA based on their conduct and the circumstances of their affairs in American Samoa.

### D. Liability for Partnership Debts

A third party doing business with a partnership may hold the partnership liable as a legal entity for any debts created in reliance on such partnership; each member of the partnership is personally or severally liable for the partnership debts. *Texaco, Inc. v. Wolfe*, 601 S.W.2d 737, 740-41 (Tex. Ct. App. 1980); *O.L. Holt v. Owen Elec. Supply, Inc.*, 722 S.W.2d 22, 24 (Tex. Ct. App. 1986). General partners are jointly and severally liable for any judgment debt of the partnership. *Kaneco Oil & Gas, Ltd. v. Univ. Nat'l Bank*, 732 P.2d 247, 250 (Colo. Ct. App. 1986). The Hongs clearly did business with KDSFA vessels in reliance on KDSFA being a partnership. There is no contrary evidence, and it is likely the Hongs would not have extended credit for supplies in such large amounts to various Korean fishing boats, including but not limited to the Chung Yong, if not for the security that KDSFA would be liable for these debts and that action would lie against KDSFA's and its partner's assets if necessary. As such, Daerim, as a partner in KDSFA, is jointly liable for the judgment debt and the vessel can be rightly seized to satisfy the partnership debt.

### E. Rule B—Attachment and Garnishment

"With respect to any admiralty or maritime claim *in personam* a verified complaint may contain a prayer for process to attach the defendant's goods and chattels." T.C.R.C.P. B(1). The valid *in personam* judgment in CA No. 78-92 allows attachment of the Chung

Yong as property belonging to Daerim, a KDSFA partner. The Chung Yong points out that there was no affidavit accompanying the complaint, as needed for Rule B attachment. However, as discussed above, the Chung Yong was correctly seized under the Hongs' Rule C *in rem* claim and, therefore, was properly before the court for Rule B attachment purposes as well.

## F. Laches and Merger

The Chung Yong has raised laches as a defense. Laches is an affirmative defense that requires a finding that a plaintiff delayed inexcusably or unreasonably in filing suit and that delay was prejudicial to the defendant. *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987). The decision on whether to apply laches depends upon the particular circumstances of the case at question. *Id.* A court must weigh all pertinent facts and equities. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992). However, in order to invoke the laches defense, a defendant has the burden of proving two factors: (1) the plaintiff delayed filling suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and (2) the delay operated to the prejudice or injury of the defendant. *Id.; Costello v. United States*, 365 U.S. 265, 282 (1961).

The Chung Yong has not proven either of the two requirements for laches. An action to enforce the judgment of CA. No. 78-92 could not have begun before the judgment was entered on January 9, 1997. The Hongs commenced this action on March 3, 1998, less than 14 months later. This is not an unreasonable and inexcusable length of time. The defense of laches is therefore inapplicable.

The Chung Yong has also claimed the defense of merger. The general rule of merger provides that "when a final and personal judgment is rendered in favor of the plaintiff, the plaintiff cannot thereafter maintain an action on the original claim or part of the original claim, although he may be able to maintain an action upon the judgment. RESTATEMENT OF JUDGMENTS § 18 (1982). As we are treating this case as an action upon the judgment in CA No. 78-92, the rule of merger also does not apply.

## G. Statute of Limitations

The Chung Yong has urged the running of the statute of limitations as a defense. This action was timely brought and does not violate the statute of limitations. A.S.C.A. § 43.0120(5) provides that actions

founded on a judgment must be brought within 10 years. This is an action to recover the award of a judgment against a member of the liable partnership, not a new action against a defendant that was or should have been known within the time period associated with the original claim. *See Stancris v. Yang*, CA No. 47-99, slip op. (Trial Div. Sept, 9, 1999). The judgment in CA No. 78-92 was entered on January 9, 1997, and this action was commenced on March 3, 1998, less than 14 months later. This action was therefore commenced well within the statute of limitations.

### Order

The Hongs are awarded judgment in the amount of $7,777.73, plus interest at 6% per annum from January 9, 1997. The Clerk of Courts shall pay this amount to the Hongs from the $10,000.00 on deposit in the court's registry. Any remainder shall be delivered to the Chung Yong's attorney, who shall return the funds to the entity entitled to them.

It is so ordered.