23CA0365 Vienmanapun v Mangum 10-31-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0365
Alamosa County District Court No. 21CV30003
Honorable Kimberly D. Cortez, Judge

---

Sirorat Vienmanapun d/b/a Masks by Siri's,

Plaintiff-Appellee,

v.

Sean Mangum; Gibraltar Contracting Solutions II, Inc.; and True Supply
Solutions, Corp.,

Defendants-Appellants.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE HARRIS
J. Jones and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 31, 2024

---

Foster Graham Milstein & Calisher, LLP, Chip G. Schoneberger, Melanie
MacWilliams-Brooks, Denver, Colorado, for Plaintiff-Appellee

The Law Office of Ricardo Rivera, PLLC, Ricardo Rivera, Monte Vista, Colorado,
for Defendants-Appellants

¶ 1    Defendants, Sean Mangum; Gibraltar Contracting Solutions II, Inc. (GCS); and True Supply Solutions, Corp. (TSS), appeal the trial court's judgment awarding plaintiff, Sirorat Vienmanapun, $10,245.54 on her breach of contract claim.[1]  We affirm.

## I.    Background

¶ 2    Vienmanapun sued the defendants for breach of contract.  Her complaint alleged that in or about April 2020, she and the defendants entered into an agreement in which Vienmanapun would sell the defendants 23,561 face masks for $20,643.16.  Vienmanapun asserted that the defendants received 14,566 masks but failed to arrange for delivery of the remaining 8,995 masks.  She acknowledged that the defendants made one payment of $6,000 for the order but alleged that, due to additional invoices and costs, $26,184.16 remained outstanding.

---

[1] We agree with Vienmanapun that because GCS and TSS have not appealed the default judgments on liability against them, they cannot challenge the district court's liability finding following the trial to the court.  Thus, we consider the arguments only as they pertain to Mangum.

¶ 3    GCS and TSS did not file an answer, and the court entered a default judgment against them.  The court reserved judgment on the amount of damages until after trial.

¶ 4    The court held a two-day bench trial, after which it made the following relevant findings of fact:

- Vienmanapun first met Sean Mangum at her restaurant in March 2020.

- Mangum described himself as a "shareholder, investor, [and] entrepreneur with many corporations," including GCS and TSS.

- In or before March 2020, Mangum asked Vienmanapun about cloth face masks that she had displayed at her restaurant.

- At the time, Mangum had a business selling face masks with his partner, Clark Vera, but production was small and limited.

- When Mangum asked about the face masks in the restaurant, Vienmanapun told him that she had a connection with a manufacturer in Thailand that could provide large quantities of masks at an inexpensive price.

- Mangum asked Vienmanapun to become a partner with him in selling masks. She declined because she was too busy with her restaurant, but she offered to help Mangum purchase masks through her connections with the Thai manufacturer.

- Vienmanapun brought Sirilak Breines and Mitchell Breines, her friends, into the conversation. Ms. Breines had connections with factories in Thailand that she used for charitable projects. The Breineses agreed to use their manufacturing connections to help Vienmanapun with the agreement they believed she had with Mangum to sell face masks to Mangum that he would, in turn, sell.

- Mangum agreed to order 20,000 masks through Vienmanapun. Mangum worked directly with the Breineses to approve the type, style, and packaging for the shipment from the Thai manufacturer.

- Though Mangum maintained at trial that he and Vienmanapun, possibly with Vera and the Breineses as well, formed a partnership to sell masks for profit, there was no partnership.

- Vienmanapun and Mangum instead entered into an oral contract whereby Vienmanapun would sell Mangum 20,000 masks manufactured in Thailand. They also agreed to unit prices of $0.79 for "simple masks" and $1.59 for "complex masks."

- Vienmanapun fronted the cost of the 20,000 masks and paid the factories directly.

- Mangum gave Vienmanapun a check for $6,000, which Vienmanapun described as a deposit on the agreed price for the 20,000 masks.

- Vienmanapun delivered 14,566 masks to Mangum. Some of the masks were shipped directly to Mangum's associates at other locations and others were shipped to Vienmanapun's restaurant where Mangum's employees picked them up.

- Mangum breached the contract by failing to pay for the masks he received.

- Taking into account the $6,000 Mangum paid Vienmanapun, Vienmanapun's damages for breach of contract amounted to $10,245.54.

¶ 5     In making these findings, the trial court largely credited Vienmanapun's testimony (though it was not always clear) on the significant issues and found that Mangum's testimony was often not credible.

¶ 6     Mangum appeals the trial court's conclusion that there was an enforceable contract between Vienmanapun and the defendants. He contends, as a threshold matter, that Vienmanapun does not have standing.  He also contends that the defendants are not liable for the alleged damages because the cost of obtaining the face masks from Thailand was a shared business expense of a partnership comprising the defendants, Vienmanapun, and the Breineses.

¶ 7     We disagree with Mangum's contentions and affirm.

## II.    Discussion

¶ 8     We address standing first because it "is a jurisdictional issue that 'must be determined prior to a decision on the merits.'" *Aurora Pub. Schs. v. A.S.*, 2023 CO 39, ¶ 24 (quoting *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7).  After concluding that Vienmanapun has standing, we turn to Mangum's partnership contention.

## A. Standing

¶ 9     Mangum contends that Vienmanapun does not have standing to sue because she acted on behalf of a partnership with the Breineses called "Masks by Siri's."  Thus, he says, any claim for breach of contract had to be brought by "Masks by Siri's."

¶ 10     We review the issue of standing de novo, *see id.* at ¶ 25, determining whether the claimant suffered an injury-in-fact to a legally protected interest, *id.* at ¶ 26.

¶ 11     Mangum's challenge to Vienmanapun's standing turns on whether the transaction at issue was one she participated in as a partner in a partnership.  If she did not — if she acted on her own behalf — Mangum does not challenge Vienmanapun's standing.

¶ 12     The trial court found that no partnership was a party to the agreement.  To put a finer point on it, the court found that Vienmanapun did not act on behalf of a partnership under the name "Masks by Siri's."  This was a finding of fact.  *See Reid v. Pyle*, 51 P.3d 1064, 1067 (Colo. App. 2002) (also holding that the person asserting the partnership has the burden of proving its existence).  And we review such a finding for clear error.  A factual finding is

6

clearly erroneous only if it has no support in the record. *In re Thomas E. Hunn Living Tr.*, 2024 COA 51, ¶ 18.

¶ 13    There is record support for the court's finding. At trial, the Breineses and Vienmanapun denied being in a partnership together. When asked whether he knew of "Masks by Siri's," Mr. Breines said that he was "not Masks by Siri." Vienmanapun explained that she owned "Masks by Siri," which was "just a DBA," and that she used the name to receive payment from Mangum.

¶ 14    Because the record supports the court's finding that no partnership existed between Vienmanapun and the Breineses, Vienmanapun had standing to sue the defendants for breach of contract. *See Reid*, 51 P.3d at 1067.

## B. Partnership Liability

¶ 15    Mangum also contends that because he and Vienmanapun were, along with others, in a partnership (or joint venture) to sell the masks, the cost of the masks was merely a business expense which could not form the basis of a breach of contract action against him. The court found that there was no such partnership, based on the following subsidiary findings of fact:

- There was no evidence of a written partnership agreement, that the parties called themselves partners, that the parties were working together as co-owners of a business for profit, or of any sharing of profits or losses.

- The $6,000 payment from Mangum to Vienmanapun was merely a repayment of a debt, rather than an indication of sharing of profits. *See* § 7-64-202(3)(c), C.R.S. 2024.

- Mangum's reliance on numerous communications from Mr. Breines was misplaced because those communications, which contained suggestions and ideas directed to Mangum and Vera, did not indicate a partnership. Mangum largely ignored Mr. Breines's messages, which in any event did not demonstrate any kind of "functioning business enterprise."

- Mangum fully expected and encouraged Vienmanapun to charge a mark-up on the mask prices from what she would pay the factory in Thailand.

¶ 16    All these findings have record support. And all of them support the conclusion that there was no partnership (or joint venture). *See* § 7-64-202 (governing formation of a partnership);

*see also Blocker Expl. Co. v. Frontier Expl., Inc.*, 740 P.2d 983, 988 (Colo. 1987) (the question whether the relevant facts, as found by the court, show a partnership is a question of law); *Reid*, 51 P.3d at 1067 (same); *A.B. Hirschfeld Press, Inc. v. Weston Grp., Inc.*, 824 P.2d 44, 46 (Colo. App. 1991) ("The determination of whether a joint venture exists is a question of fact . . . ."), *aff'd*, 845 P.2d 1162 (Colo. 1993). Although Mangum argues that the evidence — particularly the communications between himself and Mr. Breines — supports a finding that the parties were engaged in a partnership, we cannot reweigh the evidence, even if it is conflicting. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41, *aff'd*, 2021 CO 56.

## III. Disposition

¶ 17    The judgment is affirmed.

JUDGE J. JONES and JUDGE GOMEZ concur.

9