The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 20, 2025

## 2025COA17

**No. 20CA1603, *Giron v. Hice* — Government — Colorado
Governmental Immunity Act — Immunity and Partial Waiver —
Emergency Vehicles**

In *Hice v. Giron*, 2024 CO 9, the Colorado Supreme Court held
that "an emergency driver waives CGIA immunity when a plaintiff's
injuries *could have resulted* from the driver's failure to use alerts
while speeding in pursuit of a suspected or actual lawbreaker."  *Id.*
at ¶ 3 (emphasis added).  Applying this test for the first time in a
published decision, a division of the court of appeals holds that the
officer's failure to use his lights or siren until the final five to ten
seconds of his pursuit could have contributed to the accident.
Accordingly, the division reverses the district court's judgment
granting governmental immunity to the officer and the town and
directs the district court to reinstate plaintiffs' claims.

The concurring opinion addresses a second question that the supreme court directed the division to consider: to "analyze whether Officer Hice waived governmental immunity by failing to satisfy the condition that emergency drivers refrain from endangering life or property while speeding." *Id.* at ¶ 25. The concurring opinion urges the supreme court to revisit its decision in *Corsentino v. Cordova*, 4 P.3d 1082, 1093 (Colo. 2000), and permit courts to consider the nature of the emergency (i.e. the "mission") of the emergency driver in deciding to exceed the speed limit. If consideration of the officer's "mission" in this case were permissible, the concurring opinion would also deny immunity because the officer unreasonably endangered life or property.

Court of Appeals No. 20CA1603
Montrose County District Court No. 19CV30074
Honorable D. Cory Jackson, Judge

Nichele Giron, individually and as Personal Representative of the Estate of
Walter Giron; Amanda Giron; and Thomas Short, as the Personal
Representative of the Estate of Samuel Giron,

Plaintiffs-Appellants,

v.

Justin Hice and Town of Olathe,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER*
Brown and Johnson, JJ., concur

Prior Opinion Announced July 28, 2022, Modified on September 1, 2022,
Reversed in 22SC671

Announced February 20, 2025

Killian, Davis, Richter & Fredenburg, PC, J. Keith Killian, Damon Davis, Grand
Junction, Colorado, for Plaintiffs-Appellants

Tucker Holmes P.C., Bradley D. Tucker, Centennial, Colorado; Cambell,
Wagner & Frazier, LLC, Winslow R. Taylor III, Greenwood Village, Colorado, for
Defendants-Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo.
Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1      Nichele Giron, Amanda Giron, and Thomas Short brought this civil action based on a fatal motor vehicle collision with a Town of Olathe police officer, Justin Hice. The district court granted governmental immunity to the Town and Officer Hice under the Colorado Governmental Immunity Act (CGIA) and dismissed the case.

¶ 2      In *Giron v. Hice*, 2022 COA 85M (*Giron I*), after construing the relevant governmental immunity statutes, we reversed that judgment. Recognizing the undisputed fact that the officer activated his emergency lights only a short distance before the collision, we held that "an officer is not entitled to immunity when he does not activate his emergency lights or siren for the entire time he exceeds the speed limit and is in pursuit of an actual or suspected violator of the law." *Id.* at ¶ 19.

¶ 3      The Colorado Supreme Court rejected our interpretation of the immunity statutes and reversed our judgment. *Hice v. Giron*, 2024 CO 9 (*Giron II*). The supreme court held that "an emergency driver waives CGIA immunity when a plaintiff's injuries *could have resulted* from the driver's failure to use alerts while speeding in

1

pursuit of a suspected or actual lawbreaker." *Id.* at ¶ 3 (emphasis added). The supreme court remanded the case to us "to determine if Officer Hice's failure to use his lights or siren until the final five to ten seconds of his pursuit *could have contributed* to the accident." *Id.* at ¶ 25 (emphasis added). We were also directed to "analyze whether Officer Hice waived governmental immunity by failing to satisfy the condition that emergency drivers refrain from endangering life or property while speeding." *Id.* The court "defer[red] to [us] as to whether further remand to the district court is necessary." *Id.*[1]

¶ 4     On reconsideration, we reach two conclusions. First, remand to the district court is unnecessary because we can apply the test articulated by the supreme court to the facts as found by the district court to make a determination. Second, Officer Hice's failure to use his lights or siren until the final five to ten seconds of his pursuant "*could have contributed* to the accident." *Id.* (emphasis added). Accordingly, we again reverse the district court's judgment,

---

[1] After the case was returned to us, we asked the parties to file supplemental briefs addressing whether a remand to the district court was necessary. The parties filed those briefs, and we have considered them.

hold that neither the Town nor Officer Hice is entitled to governmental immunity, and direct the district court on remand to reinstate the plaintiffs' claims.[2]

## I. Facts and Procedural History[3]

¶ 5 During the summer of 2018, Officer Hice clocked a speeding vehicle while on radar patrol along Highway 50 in Olathe, Colorado. It was daylight, and the road was flat and dry. Officer Hice made a U-turn and accelerated to pursue the suspected speeder. He didn't turn on his emergency lights or siren as he sped up. About half a mile down the road, Walter and Samuel Giron[4] waited at a traffic light to make a left turn across oncoming traffic. *Id.* at ¶ 4.

---

[2] All three judges of this division join this opinion. The author of this opinion, believing that we are required by the supreme court's mandate to separately consider whether the officer failed to satisfy the statutory condition that emergency drivers refrain from endangering life or property while speeding, has filed a separate concurring opinion. The other members of the division believe that the answer to the first question in the supreme court's mandate is dispositive and we need not address the second question.

[3] But for the last paragraph in Part I, this statement of the facts and procedural history is taken verbatim from *Hice v. Giron*, 2024 CO 9, ¶¶ 4-6.

[4] Because the Girons have the same last name, we refer to them by their first names. We intend no disrespect by doing so.

¶ 6     After the suspected speeder shot through that intersection, Walter made the left turn.  That's when Officer Hice — traveling upwards of 103 miles per hour — suddenly saw the impending accident unfolding before him.  He tried to avoid T-boning the Girons by hitting the brakes and swerving to the right.  His evasive maneuver failed: Officer Hice struck the passenger side of the brothers' van at seventy-five to eighty miles per hour.  Both Walter and Samuel died.  Officer Hice was severely injured.  Roughly thirty-six seconds passed between the time Officer Hice initiated his pursuit and the accident.  Officer Hice engaged his emergency lights for the final five to ten seconds.  He never activated his siren.  *Id.* at ¶ 5.

¶ 7     The plaintiffs sued, but the district court dismissed the action because it determined that the defendants were immune from suit under the CGIA.  The district court reasoned that "Officer Hice had his emergency lights illuminated in sufficient time to provide warning to [Walter]" and therefore the plaintiffs failed to meet their burden of showing that the defendants waived immunity.  The district court also explained that it "d[id] not find that [O]fficer Hice created an unreasonable risk of injury during his pursuit" because

4

of the "favorable" driving conditions that day and because Officer Hice "had to drive fast to catch a speeder," "had specific training in driving fast," and "just prior to the collision was decelerating and trying to avoid a crash." *Id.* at ¶ 6.

¶ 8 This division of the court of appeals reversed the district court's judgment of dismissal. The supreme court reversed our judgment and remanded the case to us for further consideration.

## II. Analysis

### A. A Remand to the District Court Is Neither Necessary Nor Appropriate to Resolve this Case

¶ 9 The supreme court deferred to us as to whether further remand to the district court is necessary. Because of the breadth of the supreme court's test, and the extensive litigation of the relevant facts in the district court, we conclude that a remand is neither necessary nor appropriate.

¶ 10 We have before us and are bound by the district court's findings of historical fact because they are supported by the record. *See Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 13 (we defer to the district court's findings of historical fact unless they are clearly erroneous, meaning they have no support in the

5

record). Those critical facts are as follows. Officer Hice activated his emergency lights (but not his siren) only five to ten seconds before the collision. Officer Hice was travelling at over 100 miles per hour shortly before the collision. The accident occurred during daylight hours, with clear roads and visibility. At all relevant points, the road was straight and no structural or geographic obstacles impaired visibility of the officer's vehicle beyond the distance travelled in the last five to ten seconds before the collision.

¶ 11     As noted above, the supreme court held that the immunity statutes require a court "to determine if Officer Hice's failure to use his lights or siren until the final five to ten seconds of his pursuit *could have contributed* to the accident." *Giron II*, ¶ 25 (emphasis added). Because we review de novo the district court's application of law to the facts, *see A.R. v. D.R.*, 2020 CO 10, ¶ 37 (application of the "proper legal standard . . . to the particular facts of the case" is a question of law we review de novo), we are in as good a position as the district court to apply the test. Accordingly, we apply the test mandated by the supreme court to the facts found by the district court and proceed to decide the critical question.

### B. Officer Hice's Failure to Use His Lights or Siren Until the Final Five to Ten Seconds of His Pursuit Could Have Contributed to the Accident

¶ 12    Plaintiffs have the burden of proving that a governmental defendant waived CGIA immunity. *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 85 (Colo. 2003). But that burden "is a relatively lenient one," *id.* at 86, and plaintiffs are "afforded the reasonable inferences from [their] undisputed evidence," *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 11.

¶ 13    Because statutory immunity operates in derogation of common law, we must "strictly construe the statute's immunity provisions" and "broadly construe" the CGIA's waiver provisions. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000). We must also strictly construe exceptions to those waivers, which are effectively grants of immunity. *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000).

¶ 14    An emergency driver waives his immunity "in an action for injuries resulting from . . . [t]he operation of a motor vehicle . . . except emergency vehicles operating within the provision of section 42-4-108(2) and (3)," C.R.S. 2024. § 24-10-106(1)(a), C.R.S. 2024 (emphasis added); *Giron II*, ¶ 15. "[T]he phrase 'resulting from'

clearly requires some relationship between a plaintiff[']s injuries and the public entity[']s conduct before a waiver of immunity is triggered." *Giron II*, ¶ 15 (quoting *Tidwell*, 83 P.3d at 86). But "'resulting from' does not require courts to 'reach so far as to determine whether . . . injuries were "caused by" [an officer] for purposes of the tort analysis that the finder of fact in the case would ultimately undertake.'" *Id.* (emphasis added by *Giron II*) (quoting *Tidwell*, 83 P.3d at 86). Instead, the question is whether the plaintiffs have "demonstrated a possibility" that Officer Hice's failure to use his lights or siren resulted in their injuries — not whether Officer Hice's omission did in fact cause the accident. *Id.* at ¶ 16 (emphasis added).

¶ 15 Applying this test, we conclude that there is only one answer: Officer Hice's failure to use his lights or siren until the final five to ten seconds of his pursuit "could have contributed" to the accident. *Id.* at ¶ 25.

¶ 16 The facts of this case stand in stark contrast to the supreme court's example of circumstances under which there would be no possibility that an officer's failure to use his emergency lights or siren could have contributed to an accident. It explained that "it

8

would make little sense to interpret the statutes as waiving immunity if an officer fails to use his alerts for, say, the first five seconds of a five-minute, high-speed pursuit when an accident occurs in the fifth minute." *Id.* at ¶ 23.

¶ 17    We can provide another more factually analogous hypothetical, one in which it could not logically or reasonably be determined that the officer's failure to use his emergency lights for a period longer than five to ten seconds before the collision could have contributed to the accident.[5]  If immediately before the site of the accident, the road had curved or been within a tunnel, it might have been physically impossible for Walter to see Officer Hice's emergency lights before that last five to ten seconds, such that Officer Hice's failure to use lights during that period could not have contributed to the accident.  But those are not the facts of this case.  Here, the road was straight, and nothing impaired the visibility of the officer's emergency lights beyond the distance travelled in the five to ten seconds that the lights were illuminated.

---

[5] The immunity statute permits an emergency operator to use emergency lights or a siren (or both).  *See* § 42-4-108(3), C.R.S. 2024.  It is undisputed that Officer Hice never activated his siren, so we address only the use of emergency lights.

¶ 18    A number of witnesses testified before the district court. The court found that one of these witnesses, Tony Kop, was especially persuasive. Mr. Kop testified that he was stopped in the turn lane immediately behind the Girons' vehicle and that he observed the Girons "speaking to one another" moments before Walter initiated the fatal left-hand turn. While it is impossible to know if, in fact, this conversation contributed to the accident, it certainly is possible that it did so. This testimony is important because it highlights what we all know: drivers do not always pay total attention to the task at hand.[6]

¶ 19    But there are a multitude of other reasons why a driver's attention might be momentarily lost. A momentary loss of attention can have devastating effects, especially when another vehicle is speeding down the other side of the roadway at over 100 miles per hour. At that speed, things happen very fast.

---

[6] We emphasize that our task is not to determine whether Walter acted with reasonable care or was negligent in not perceiving the officer's emergency lights and making the left turn in front of the speeding police vehicle. That question may well be relevant at a trial of the plaintiffs' claims, but it has no bearing on whether the officer's failure to illuminate his lights earlier in the chase could have contributed to the accident.

¶ 20    On this factual record, we cannot exclude the possibility that the Girons might have perceived lights or sirens coming from a car travelling at great speed down the opposite side of the roadway they had to cross to make a left turn more than five to ten seconds before the crash. Thus, we conclude that it is possible that Officer Hice's failure to use his emergency lights or siren until the final five to ten seconds of his pursuit could have contributed to the accident and that Officer Hice and the Town waived governmental immunity under section 24-10-106(1)(a).

### III.    Disposition

¶ 21    The district court's judgment of dismissal is reversed. The defendants are not entitled to immunity under the CGIA. The case is remanded to the district court to reinstate the plaintiffs' complaint and to conduct further proceedings consistent with this opinion.

JUDGE BROWN and JUDGE JOHNSON concur.

JUDGE BERGER specially concurs.

JUDGE BERGER, specially concurring.

¶ 22    In its remand order, the supreme court directed this court to address two issues.  First, we were instructed "to determine if Officer Hice's failure to use his lights or siren until the final five to ten seconds of his pursuit could have contributed to the accident." *Hice v. Giron*, 2024 CO 9, ¶ 25.  The court also directed us to address whether "Officer Hice waived governmental immunity by failing to satisfy the condition that emergency drivers refrain from endangering life or property while speeding."  *Id.*

¶ 23    In our prior opinion, *Giron v. Hice*, 2022 COA 85M, *rev'd*, 2024 CO 9, we did not address the second question because we thought that our disposition of the first question made it unnecessary to address the second question.  For similar reasons, two members of this division believe that our disposition of the first issue is again dispositive and eliminates the need to address the second question.  Ordinarily I would agree, but I disagree with that conclusion here because, as I read the supreme court's opinion, we are required to address the second question.  The district court ruled that Officer Hice did *not* endanger life or property while speeding, and we presume that the supreme court knew of this finding or conclusion.

Nevertheless, the supreme court directed us to address the question.

¶ 24     Thus, in addition to authoring the division's unanimous opinion, I write separately to explain why part of the analysis to determine whether the "operator's speed created an unreasonable risk of injury or damage to life or property," *Corsentino v. Cordova*, 4 P.3d 1082, 1093 (Colo. 2000), should include consideration of the emergency driver's reason for exceeding the speed limit

¶ 25     To the extent the district court made a factual finding that Officer Hice did not endanger life or property while speeding, it makes no difference if I (or another appellate judge) disagree with that finding.  We must defer to factual findings if they have any support in the record.  *See Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 13.

¶ 26     But a finding that is based on a misapplication of the applicable law is not entitled to deference.  *A.B. Hirschfeld Press, Inc. v. Weston Grp., Inc.*, 824 P.2d 44, 46 (Colo. App. 1991) (An appellate "court is bound by the trial court's findings unless they are based upon a misapplication of the law or there is no support in the record."), *aff'd*, 845 P.2d 1162 (Colo. 1993).

¶ 27    It does not appear that the district court considered Officer Hice's "mission" in making its finding.  That was consistent with the supreme court's opinion in *Corsentino,* 4 P.3d at 1093.  Because *Corsentino* does not appear to allow the court to consider the officer's mission, and I am bound by the court's factual finding, I would have to affirm the district court's conclusion that Officer Hice did not endanger life or property during the chase.    But if the district court were permitted or required to consider Officer Hice's mission, the analysis would change significantly and the district court as the finder of fact, and an appellate court reviewing such a finding or conclusion might well reach a different decision.

¶ 28    In *Corsentino,* the supreme court held that the district court must make two independent inquiries to determine whether an emergency driver has endangered life or property and thus has forfeited governmental immunity.  The first question is whether the driver was responding to an emergency call.[7]  *Id.* at 1088.  The

---

[7] It is not clear whether the district court determined that there was, in fact, an emergency that required Officer Hice to exceed the speed limit.  Reviewing the district court's order as a whole, I think the court at least implicitly found that there was an emergency, and I assume that as well, thus satisfying the first prong of *Corsentino.*

14

supreme court set forth an objective standard to determine whether the driver was responding to an emergency call: "whether the emergency vehicle operator reasonably believed that []he was responding to an emergency based on information []he knew or should have known." *Id.* at 1088. This appears to be a binary choice: the driver was either properly responding to an emergency call, in which case the court proceeds to the second independent part of the inquiry, or was *not* responding to an emergency call, which ends the inquiry and there is no immunity. *Id.* at 1090. If the court determines that the driver was indeed responding to an emergency call, then the court proceeds to determine if the driver endangered life or property; if the driver did so, immunity is forfeited. *Id.* at 1092-93.

¶ 29 In applying the second portion of the inquiry for immunity, a court must determine if the emergency driver's "speed created an *unreasonable* risk of injury or damage to life or property." *Id.* at 1093. While section 42-4-108(2)(c) does not contain a reasonableness requirement, *Corsentino* added one. This makes eminent sense because absent a reasonableness requirement, driving upward of 100 miles per hour necessarily endangers life and

15

property.  Reaction times of those in the proximity of the speeding

vehicle, including the officer, are greatly reduced by such speeds,

the margins of error correspondingly decrease, and the extent of

personal injuries and property damage increases substantially and,

depending on the speed, exponentially.  This is true regardless of

weather and road conditions.  There is a reason why virtually every

American jurisdiction, including Colorado, imposes speed limits on

its highways and roads and why Colorado punishes speeding

violations.[8]  Nor does special training to drive at high speeds always

---

[8] The posted speed limits during portions of Officer Hice's chase were 45 and 55 miles per hour.  Officer Hice's maximum speed of 103 miles per hour exceeded the 45-mile-per-hour limit by 58 miles per hour.  At a posted speed of 55 miles per hour, Officer Hice's speed exceeded the limit by 48 miles per hour.  The penalties for speeding in Colorado are established in section 42-4-1101(12), C.R.S. 2024:

> (a) A violation of driving one to twenty-four miles per hour in excess of the reasonable and prudent speed or in excess of the maximum lawful speed limit of seventy-five miles per hour is a class A traffic infraction.

> (b) A violation of driving twenty-five or more miles per hour in excess of the reasonable and prudent speed or in excess of the maximum lawful speed limit of seventy-five miles per hour is a class 2 misdemeanor traffic offense;

mitigate the danger of such high speeds. It is not a defense to a charge of speeding that the driver is an unusually competent driver or that the driver has been trained to drive at speeds that vastly exceed the speed limit. Nor is it a defense to a speeding charge that the roads were in good condition and weather conditions were favorable. As generally recognized, speed kills.[9]

¶ 30 Even though *Corsentino* established a reasonableness requirement, it appears to prohibit consideration of the emergency driver's "mission" — or at the very least the supreme court views it as irrelevant — when analyzing the reasonableness of the risk created by the emergency driver's speeding. The supreme court does not explicitly say it is prohibited, but such a reading is certainly implied in that court's determination that the district

---

> except that such violation within a maintenance, repair, or construction zone, designated pursuant to section 42-4-614, is a class 1 misdemeanor traffic offense.

[9] There is a wealth of published studies that document the relationship between speeding vehicles and death and severe injuries. *See, e.g.*, Nat'l Highway Traffic Safety Admin., *Speeding*, https://perma.cc/CY52-EFAP; Inst. for Road Safety Rsch., *SWOV Fact Sheet: The Relation Between Speed and Crashes* (Apr. 2012), https://perma.cc/T73H-997Z.

court "applied the proper legal standard in finding that Cortese endangered life and property" by not basing "its finding of endangerment on the [officer's] mission." *Corsentino*, 4 P.3d at 1093 ("[W]hether the emergency vehicle operator was responding to an actual emergency has no bearing on a court's determination of whether she endangered life or property.").

¶ 31  Maybe this is because whether there was an emergency was determined as part of the first inquiry. *See id.* But as noted above, that inquiry leads to a binary determination: either the driver was responding to an emergency or the driver was not. Such a binary determination does not adequately measure the *reasonableness* of the emergency driver's choice to substantially exceed the legal speed limit.

¶ 32  There are many situations when an emergency driver would act reasonably by substantially exceeding the speed limit, even at the speeds driven by Officer Hice. Pursuit of a serial killer, a bomber, or a person suspected of kidnapping a child are obvious, but by no means the only, examples. But chasing a speeder at ten miles per hour above the speed limit is not the same as chasing that speeder at forty or fifty miles above the speed limit.

¶ 33    For good reason, the ultimate result of the chase cannot inform whether the driver endangered life or property.  A contrary rule, as the supreme court explained in *Corsentino*, would lead to "a de facto abrogation of the immunity granted to emergency vehicle operators because the only time emergency vehicle operators need to invoke immunity is when they cause damage or are involved in an accident."  *Id.*  "By its nature, endangerment looks at the surrounding circumstances, both prior to and at the time the accident occurs, in conjunction with the conduct in question.  The ultimate result does not figure into the concept of endangerment."  *Id.*

¶ 34    But I don't understand why the "mission" that purportedly justifies the speeding in the first place is not a relevant factor in determining whether the speeding created an *unreasonable* risk of injury or damage to life or property.  How can a court meaningfully determine whether the speeding unreasonably endangered life or property without considering *why* the officer was speeding in the first place?  Indeed, I suggest that the purpose of the mission may be one of the most important questions in determining whether the emergency driver unreasonably endangered life or property.

¶ 35 Even if the officer initially and properly responds to an emergency (the first part of the *Corsentino* inquiry), at some point the officer still may unreasonably create a risk of injury or endanger life or property by vastly exceeding the speed limit. It depends on the circumstances.

¶ 36 Officer Hice was attempting to stop a motorist who was speeding on Highway 50. Officer Hice clocked the motorist at approximately seventy-six miles per hour in either a forty-five- or fifty-five-mile-per-hour zone. To be sure, the motorist violated the law by exceeding the posted speed limit, but Officer Hice had no reason to suspect that driver had committed any other, more serious, offenses.

¶ 37 The question is, or in my opinion should be, whether Officer Hice acted reasonably in driving at more than 100 miles per hour to make a traffic stop under all of the circumstances presented.

¶ 38 I respectfully urge the supreme court in this or another appropriate case to revisit its opinion in *Corsentino* and to hold that a court must consider the purpose for which the emergency driver exceeded the speed limit in determining whether the driver endangered life or property as prohibited by section 42-4-108(2)(c).